# WILLIAM G. W. WHITE *vs.* ALEX. B. DAVIDSON, THOMAS HARRISON, BENJAMIN F. HARRISON, CARTER A. HALL, THOS. W. HALL and BEVERLY C. SANDERS.

The employment of an attorney to prosecute an injunction suit does not confer on him, *ex necessitate*, the right to bind his clients to indemnify a third party who becomes surety on the injunction bond.

An attorney *as such* may submit a cause to arbitration, and if he makes a compromise *bona fide* which works no considerable hardship the courts will be slow to disturb it, and will refuse when it has been acquiesced in with full knowledge of the facts.

Where an agency created and defined by a written instrument is delegated to *three* it cannot be executed by *one*, and the agents cannot delegate their authority to another.

Where a party without authority assumes to act as agent for others, the latter are not bound, unless on full knowledge they recognised and adopted his acts.

The issuing of an injunction does not necessarily require a bond, for that is a matter resting in the discretion of the judge who is to order it.

If a partner without authority therefor, agrees to indemnify a surety on an injunction bond in a suit prosecuted for the benefit of the firm of which he is a member, his act does not bind the firm unless his co-partners subsequently acquiesced therein.

APPEAL from the Superior Court of Baltimore city.

*Assumpsit* by the appellant against the appellees. The *nar* contains the usual money and *insimul computassent* counts. Plea, *non assumpsit*. A bill of particulars was furnished on demand, stating that plaintiff's claim is founded on a *written* promise to indemnify him if he would become security of Henry Carter in an injunction bond to James M. Carlisle and others, dated the 22nd of June 1846, made to plaintiff by Joseph H. Bradley, the solicitor and agent of defendants, and by authority of defendants to Bradley, and is accompanied by particular items of costs, and amounts paid Carlisle by plaintiff on account of a judgment recovered against him on this bond, amounting to $3726.32.

1*st Exception.* The facts of the case as proved in evidence

are sufficiently stated in the opinion of this court.   The plaintiff then offered six prayers, in substance as follows:

1st. If the jury find that defendants, or their respective firms, were creditors of Carter and Washington, and they, or any member of their respective firms, were privy to the employment of Bradley as counsel to secure their claims, and that Bradley so employed, advised the filing, and did file the bill of injunction in the name of Henry Carter, with the privity and consent of defendants, and that to obtain the requisite security upon the injunction bond in that suit, Bradley, as such counsel, prevailed upon plaintiff to become such security, upon the assurance that the creditors whom he represented as counsel would indemnify him, then such assurance so made by Bradley to plaintiff is legally binding on defendants,—*(rejected.)*

2nd. If the jury find that Sanders and Hall, or either of them, were the agents of defendants, and that they authorised Sanders to employ Bradley to obtain the injunction mentioned, and that Bradley, with the approbation of Sanders, acting for these creditors, drew up a paper assuring plaintiff that he would be indemnified for going on the injunction bond, and that in consideration of this he did become security on the bond, then defendants are bound by the acts and promises of their agent and attorney, Bradley,—*(granted.)*

3rd. If the jury find that Sanders, assuming to act for the Baltimore creditors of Carter and Washington, employed Bradley as their counsel to file an injunction bill in the name of, and by arrangement with, Henry Carter, for their benefit, and also to settle with one Patterson his claim under a deed of trust as stated in evidence, and that Sanders did, at the time of so employing Bradley, authorise him to write the letter to plaintiff, requesting him to become security on the injunction bond, and in consequence thereof plaintiff did become such security, then he is entitled to indemnity against the defendants, *provided* the jury further find that defendants, or any member of their respective firms, did, subsequently, and with a knowledge of such employment, contribute their respective proportions of Bradley's fee in the premises, and their proportion towards the settlement of Patterson's claim accord-

ing to said arrangment made through Sanders, and with a knowledge that the same was effected by him, and it is no defence in this case that defendants had not previously authorised Sanders, or were not aware of the agreement made by Bradley with plaintiff under the sanction of Sanders, *(rejected.)*

4th. (This prayer was abandoned by the appellant in this court, and therefore need not be stated.)

5th. If the jury find that defendants were creditors of Carter and Washington, and desired to secure their claims by legal proceedings to annul the deed of trust to Carlisle, and that Sanders, assuming to have full power from them to act in the premises as their agent, went to Washington, and, under the advice of Bradley as counsel, made an arrangement with Henry Carter, by which Sanders caused an injunction bill to be filed with a view to benefit defendants, and, with a view to obtain the necessary security on the bond required in that suit, was privy and consented to the writing of Bradley's letter to plaintiff, and that in consequence thereof and the promise of indemnity therein plaintiff became such security, and that at the time of so acting Sanders and Davidson, trading as Davidson and Sanders, were creditors of Carter and Washington, then both Sanders and Davidson are liable to indemnify plaintiff against loss as such surety in this suit, if the jury find a joint liability to plaintiff between them and their co-defendants.   And if the jury further find that at the time of his procuring Bradley to file said bill, Sanders promised that the creditors would pay him a fee, and further arranged through Bradley that defendants would retire a note in bank by the substitution of another note, which they would pay as part and parcel of the arrangement made by Sanders to secure their claims, and upon his return to Baltimore Sanders reported to his co-defendants that he had employed Bradley as counsel for them, and that Bradley had filed the bill and obtained the injunction for their benefit, and for so doing, as well as his future management of the suit, they were to contribute to his fees, and that Henry Carter was to be released by them from all liability for the debts of Carter and Washington to them,

but that said Carter had furnished the security on the injunction bond; and further reported said arrangement in reference to the note, then his co-defendants had notice from that time that Sanders had assumed to act in the premises as their agent upon his own judgment and discretion, and especially in reference to the institution of the suit and employment of counsel. And if the jury further find that, with full knowledge of the representations of Sanders so made to them, defendants agreed to, and did, recognise his said agency in their behalf, and for that purpose did perform what he had undertaken they should perform in respect to the counsel fees and note, and then and there agreed and consented that Sanders should continue to act as their agent in respect to the future management of said suit, and that Sanders, with their consent and privity, afterwards wrote the letters to Bradley read in evidence, and continued to act and was recognised by them as their agent until the dissolution of said injunction, then from the time of their so continuing Sanders as their agent, his co-defendants are chargeable with all notice which Sanders had of the promise of indemnity contained in Bradley's letter; and if the jury further find that Sanders had at the time of being so continued as agent, and recently before then, by his previous acts, authorised Bradley to write said letter, which Sanders fully recollected, then it is not competent for his co-defendants to repudiate their liability on their promise of indemnity in that letter, if the jury find that before the termination of Sanders' agency, and after his continuance therein, by consent of his co-defendants, there was sufficient and reasonable opportunity for them to have notified plaintiff that they repudiated the promise of indemnity to him, and that they failed so to do,— (rejected.)

6th. If the jury find all the facts stated in the preceding prayer they ought to find therefrom, that his co-defendants have, with full knowledge of the material facts connected with Sanders' agency in their behalf, agreed to ratify and adopt his agency in the premises; and if they find that his co-defendants so ratified his agency in part with such knowledge and the further knowledge, that he had been acting as their agent

upon his own judgment and discretion, then they are responsible for his contracts and undertakings at the time of transacting them within the scope of said agency, notwithstanding at the time of such partial ratification they may have relied on his erroneous statements in respect to some of the terms of the arrangement so made by him in their behalf,—(rejected.)

The defendant then offered prayers in substance as follows:

1st. If the jury believe there was an arrangement between Carter and defendants in regard to legal proceedings to be instituted by Carter to set aside a deed of trust made by his former partner, and that the terms of this agreement were, that Carter should file an injunction bill and furnish the security upon the injunction bond, upon condition that defendants should release him from their claims against him as creditors, and that after this agreement the plaintiff became surety in the bond without any further agreement between defendants and him or Carter, the plaintiff is not entitled to recover,— (granted with consent of plaintiff.)

2nd. That under the bill of particulars filed in this case the plaintiff can only recover upon the promise in writing referred to therein,—(granted with consent of plaintiff.)

3rd. That the plaintiff cannot recover unless the jury find the letter to him, set up as the foundation of this suit, was duly authorised by all the defendants, or subsequently ratified by them after notice of the same, or was authorised by some and ratified by the rest after notice,—(granted.)

4th. That the mere relation of counsel or attorney without any special authority, gave Bradley no power to write this letter so as to bind defendants or any of them to any contract of indemnity contained in it,—(granted.)

5th. That this letter is insufficient in law to bind the defendants, and therefore the plaintiff cannot recover,—(rejected.)

6th. If the jury find that plaintiff became the surety of Carter in the bond referred to, and on the 2nd of February 1854, executed and filed in this case a release to Carter from all liability or responsibility to him by reason of such suretyship, then the plaintiff is not entitled to recover,—(rejected.)

To the several rulings of the court, (FRICK, J,) as indicated in this exception adverse to him, each party excepted.

*2nd Exception.*—The defendants objected to the admissibility in evidence of what passed at the interviews between Bradley and Sanders and Hall, and to the competency of Bradley to testify in relation thereto, and to the letters to him from Sanders, upon the ground that what passed at such interviews and said letters, were privileged communications between client and attorney; and also to the competency of Bradley, upon the ground that he was interested in the event of this suit, all which objections the court overruled and defendants excepted.

*3rd Exception.*—The plaintiff offered in evidence a copy of the injunction bond referred to, attested by a certificate of the clerk of the circuit court of the District of Columbia, under the seal of said court, "that the annexed is a true copy of the original bond filed in the case of *Henry Carter vs. James M. Carlisle, et al.*" The attestation of the clerk was also certified to by the chief judge of said court. The defendants objected to this copy being read in evidence upon the ground that the same appeared to be a part of a record, and that part of a record, however authenticated, should not be permitted to be read in evidence; and also that said copy was not legally certified or authenticated. These objections the court overruled and defendants excepted.

The verdict and judgment were in favor of the defendants and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*Robert J. Brent* for the appellant, argued:

1st. The plaintiff's first prayer was erroneously rejected. Bradley was unquestionably the counsel of these defendants in the injunction suit. They all contributed *pro rata* to the payment of his retaining fee, and in all respects and at all times followed his advice as such counsel, to promote the purposes of that suit. The paper of the 19th of June 1846, signed by the firms comprising all these defendants, clearly shows, that they had all placed their claims under his legal advice and control,

and he was to exercise plenary judgment and discretion, whether the proceedings should be in the name of the creditors or of Carter. In pursuance of this authority he states that he filed the bill in the name of Carter, and as a necessary means to that end, promised indemnity to the security on the injunction bond, and at the time he did so Sanders was privy and assenting for those who were acting with him in the common purpose of prosecuting under his advice and through his professional agency their affiliated and associated rights as creditors. He also proves, that Thomas W. Hall authorised him to procure security for Carter's bond and to promise indemnity in behalf of the creditors. Thomas W. Hall was a member of the firm consisting of the two Harrisons and himself, and as this agreement was with a view to the recovery of a claim due to that firm, we hold, upon the implied authority of each partner, to bind the firm to this agreement, irrespective of all other considerations, that it is conclusive upon these three defendants. One partner can release a debt. 4 *G. & J.*, 310, *Smith vs. Stone.* He can bind the firm by any act in relation to their partnership claim. 7 *H. & J.*, 28, *Coursey vs. Baker. Ibid*, 213, *Barger vs. Collins.* 2 *Pick.*, 285, *Marsh vs. Gold.* If one partner, within the scope of the partnership authority, commits a fraud, it is equally in law the fraud of all the partners. 1 *Parsons on Cont.*, 62. For the like reason the agreement of Sanders binds his co-partner, Davidson. Here then are five defendants, all of whom, either personally or by their co-partners, expressly authorised Bradley to make this contract of indemnity. The other defendant, Carter A. Hall, was one of the committee on behalf of the creditors, but states that he did not take an active part therein, and denies that he assented to any agreement about the security. But he and all the defendants concede, that Bradley was their counsel, feed by them, as such filed the bill for their benefit and with their privity in Carter's name. On this, and independent of any express authority, we contend, that as a means to the common aim and object of the defendants their counsel had a right to procure the requisite sureties in the injunction bond, and for that purpose to bind them to indemnity, and this

whether they knew it or not.  2 *Greenlf. on Ev.*, sec. 141. 2 *McCord's Ch. Rep.*, 409, *Smith vs. Bossard.*  1 *Pick.*, 462, *Adams vs. Robinson.*  3 *Md. Ch. Dec.*, 395, *Kent vs. Ricards.*  7 *Cranch*, 436, *Holker vs. Parker.*  1 *Dallas*, 164, *Somers vs. Balabrega.*  1 *Overton*, 299, *Blount vs. Foster.*  8 *Shepley*, 558, *Rice vs. Wilkins.*  1 *Am. Com. Law Cases*, 4.   17 *Ohio*, 460.

Where there is a community of design, and the combined action of many for the attainment of a specific object, the rule of law makes all responsible for the action of any one of the confederates in furtherance of the general purpose of all, and upon this principle alone the authority given by Sanders and Hall, or either of them, to Bradley, the selected counsel of the defendants, is to be considered as the authority of all, especially when it is seen that the injunction in the name of Carter, which was sought for, could not be obtained without security on the bond of Carter.  1 *Greenlf. on Ev.*, sec. 174, note 3.  2 *Starkie on Ev.*, 29, 31, 205.  9 *Eng. C. L. Rep.*, 414, *Perham vs. Raynal.*  5 *G. & J.*, 144, *Owings & Piet vs. Low.*  In such case the declarations of one are the declarations of all acting with him.  2 *Barn. & Ald.*, 673, *Sandilands vs. Marsh.*  1 *Starkie's Rep.*, 81, *Nicholls vs. Dowding.*  If plaintiff pays money for a debtor to his creditor upon an agreement to indemnify plaintiff by mortgage and to assign judgments, the plaintiff is an agent and may recover the money paid.  12 *G. & J.*, 36, *Hall vs. Creswell.*  If C becomes bail for a debtor at the request of B, and on B's promise to indemnify him, B is liable, on his parol promise, which is original.  1 *Pet.*, 476, *De Wolf vs. Rabaud.*  2 *Do.*, 170, *Townsley vs. Sumrall.*  12 *Mass.*, 297, *Perley vs. Spring.* 17 *Johns.*, 114, *Chase vs. Day.*  If a guarantor promises, before delivery, absolutely to pay, the *statute of frauds* does not apply.  2 *Saund. on Pl. & Ev.*, 54.  1 *Esp.*, 121, *Croft vs. Smallwood.*  2 *Ld. Raym.*, 1087, *Buckmyr vs. Darnall*, also reported in 1 *Salk.*, 27.  And it seems, that if before delivery defendant verbally promises absolutely to pay, he is liable, though the party for whom he promises may be also liable.  *Manuscript case of Wolfolk vs. Baltzell* in the *Court*

White *vs.* Davidson, *et al.*

*of Appeals* in 1839, 1 *Gill*, 260, *Conolly vs. Kettlewell.* The distinction is whether the promise is to pay absolutely or only secondarily on default. It is always for the jury to whom the credit is given. 2 *Saund. on Pl. & Ev.*, 547. Wherever the promise is not within the statute *indebitatus assumpsit* lies. 7 *H. & J.*, 392, *Elder vs. Warfield.* There is in this case a sufficient consideration for the promise of indemnity. 1 *Saund. Pl. & Ev.*, 179. But here we have a written indemnity in behalf of the creditors, signed by Bradley, their agent, and his authority may be proved by parol. 2 *Saund. Pl. & Ev.*, 551.

2nd. The next question arises on the refusal of the court to grant the plaintiff's third prayer. This prayer is designed to maintain the legal sufficiency of the evidence, if believed, to show the liability of the defendants for the authority given by Sanders to Bradley, and under which he made the contract of indemnity to the plaintiff. If the three defendants constituting the committee named in the agreement of June 1846, instead of Sanders, had authorised Bradley to give this indemnity to White, and had not disclosed their written authority and the terms of it to White, there can be no doubt that the principals for whom they acted would be bound on the indemnity promised, because they had authorised the committee to indemnify the surety of Carter under the advice of Bradley, and for so doing had promised indemnity to the committee. Even a special agent to do a thing may bind his principal at the time by a warranty or promise of imdemnity, if not expressly *forbid to do so,* upon the principle, that every thing is supposed to be comprehended in the authority which is necessary to effectuate the object in the best manner. *Paley on Agency,* 210. 1 *Parsons on Cont.*, 50, 51. But this written authority, so far from denying to the agents the power to promise indemnity in behalf of their principals to the surety of Carter, expressly promises them indemnity if they personally incur responsibility to such surety. It contains the strongest implied authority to contract directly for the principals, and incur primarily for them a liability which they agreed indirectly to assume. But we draw a still stronger inference from

23    v.8

this paper.   It is subscribed by the three firms of which the six defendants were members, and the three agents named in it are three of these defendants; these agents are, therefore, both principals and agents in that paper.   We show, therefore, by this paper as against all these defendants, that they and their firms contemplated giving indemnity to the sureties of Carter, and that they were willing themselves to authorise the very thing to be done which was done by the advice and procurement of their counsel and with the privity of Sanders, acting as a substitute for the original committee of three.   In such a case, very slight evidence of the authorised substitution of Sanders to act in place of the three original agents who failed to act conjointly, would be sufficient; and we insist, that if such substitution is proved, that the substitute is to be taken, *prima facie*, to have all the powers conferred upon the three for whom he is substituted.   So far as Carter A. Hall is involved, we have his explicit admission that he recognised Sanders, and ratified his arrangement with Carter upon the representation made by Sanders that Carter was to furnish the security.   He also admits that he declined to act on the committee, and acquiesced in the acting of Thomas W. Hall and Davidson.   It would be to sanction a constructive fraud now to allow, after such acts of acquiescence and laches, and after his direct sanction of the agency of both Thomas W. Hall and Sanders, and of Bradley, the counsel for the creditors, to turn round and repudiate the solemn contract made by his own counsel, with the privity of both Hall and Sanders; and this especially after he had, as a creditor, taken all the benefit he could by the injunction suit, based on the bond signed by the appellant, which suit he knew was brought, and which he sanctioned by paying his proportion of Bradley's fee and of the note given to retire the prior lien of Patterson, as arranged by Bradley and Sanders.   After such acts, shall it be tolerated in morals for him, at this late day, to repudiate the contracts made in his behalf because not informed or falsely informed by his own agent of a particular stipulation?   But independently of an express indemnity, we contend, that upon all these facts, if White was told the suit was for the benefit of the creditors

and that Carter was to be released, as shown on the face of the written indemnity, then he would have a right to recover on an implied *assumpsit* as against all these creditors, upon the principle, that he was in fact their security and went on the bond at their request and for their benefit, and that on such a state of facts the law would not, in the absence of a special contract, imply a right to recover against Carter, the nominal principal in the bond.   It was, in effect, their suit, prosecuted by their counsel and for their benefit, and upon their agreement to release Carter in consideration of the use of his name as nominal complainant.   2 *Pet.*, 613, *Chirac vs. Reinecker.*

This prayer rests also on the distinct principle, that the subsequent ratification of the act of Sanders in employing Bradley as counsel to obtain this suit, by contributing money through Sanders towards the fee of Bradley and the Patterson claim, with full knowledge of Sanders having so claimed to act for them, and of all the material acts done by him, is equivalent to a previous authority, and that it is no defence to show that they were, at the time of such ratification, unaware of the agreement made by Bradley with the plaintiff, under the sanction of Sanders.   An agent may be constituted by ratification with knowledge of material facts, and it is equal to a *previous authority.   Story on Agency, secs.* 133, 134, 135, 138, 139, 140, 249, 253.   28 *Law Lib.*, 74, 82, 86, 91, 111.   2 *Kent's Com.*, 616.   7 *East*, 164, *Hovil vs. Browning.*   9 *Cranch*, 161, *Clark vs. Van Riemsdyk.*   Sanders and Bradley were both continued as agents after the co-defendants were informed and ratified what was told them, and nobody else transacted the business but Sanders.   Under this sanction of his acts and the continuing authority to superintend the suit, notice of this contract of indemnity to Bradley and Sanders is notice to their principals from the time they constituted them their agents, and they cannot deny such notice any more than their agents could. *Ambler*, 439, *Le Neve vs. Le Neve.*   2 *Strange*, 1183; *Scrimshire vs. Alderton.*   1 *Esp.*, 290, *Cowen vs. Simpson.*   2 *Eq. Cases Abr.*, 685.   3 *Merivale*, 210, *Toulmin vs. Steere.*   1 *Term Rep.*, 12, *Fitzherbert vs. Mather.*   4 *Do.*, 66, *Willis vs. Martin.*   1 *Ves., Sen.*, 62, *Maddox vs. Maddox.*   13 *Ves.*,

121, *Hiern vs. Mill.* There is no difference between actual and constructive notice in such a case. *Ambler*, 626, *Sheldon vs. Drummond.*

3rd. The *fifth* prayer of the appellant ought to have been granted, as in its first part it simply establishes a joint liability between the two co-partners, Davidson and Sanders, for the acts of Sanders in respect to their partnership claim, and then proceeds to charge the other defendants with constructive notice of the contract of indemnity made with the plaintiff from the time that they recognised Sanders as their agent in superintending and managing the injunction suit, and thus became bound by the previous notice fastened on their agent, Sanders. We consider that this prayer is fairly deducible from the doctrine above discussed, in relation to constructive notice to the principal, of what is known by his agent in respect to the *res gestæ* of his agency. The plaintiff's *sixth* prayer is for the same reason maintainable, and stands upon grounds equally secure, as it raises legitimate inferences from the facts stated in the *fifth* prayer. The defendants' *third* and *fourth* prayers cannot be maintained if the principles above discussed by us are approved by this court, as they virtually negative all right in the plaintiff to recover on this evidence.

4th. In regard to the appellees' exceptions, we insist there was no error in the court's rulings on these points. Their first exception was correctly decided, because Bradley was a competent witness and committed no breach of professional confidence in giving the testimony, because he was also an agent, and as such a party to the transaction, and therefore White is entitled to all the facts bearing on the question of his authority. 1 *Greenlf. on Ev.*, secs. 244, 245. 8 *Car. & Pay.*, 596, *Regina vs. Avery.* 2 *Nev. & Man.*, 310, *Ripon vs. Davies.* 5 *Man. & Gr.*, 271, *Shore vs. Bedford.* 5 *Barn. & Adol.*, 502, *Griffith vs. Davies.* *Peake's Cases*, 108, *Duffin vs. Smith.* The evidence being admissible for any purpose, as to prove the retainer of counsel or the authority to make the offer of indemnity, or any part of the evidence being legally admissible, the general objection to the whole cannot be insisted on in this court. 3 *Gill*, 220, *Budd vs. Brooke.*

White *vs.* Davidson, *et al.*

Their second exception shows on its face very clearly that the attested copy of the injunction bond was read by consent of parties. And so also, we contend, the appellees' prayers were correctly refused.

*Wm. A. Talbott* and *Geo. Wm. Brown* for the appellees, argued:

1st. That the employment of counsel to secure the claims of the defendants against Carter and Washington, and the filing by such counsel of a bill for injunction, did not confer an authority on the counsel to bind the defendants by any assurance of indemnity to the plaintiff, and the appellant's first prayer was therefore properly rejected, inasmuch as it did not require the jury to find that the counsel gave such assurance with the privity and consent of the appellees, or any subsequent ratification by them, and the appellees' third and fourth prayers were properly granted as containing the law of the case. That an attorney, by virtue of his retainer as such, cannot bind his client to any such obligation as to indemnify a surety on an injunction bond, see 4 *Gill*, 20, *Doub vs. Barnes.* 21 *Conn.*, 245, *Derwort vs. Loomer.* 2 *Greenlf. on Ev., sec.* 141. 13 *Metcalf*, 413, *Shores vs. Caswell, et al.* 15 *Verm.*, 320, *Vail vs. Jackson. Kyd on Awards*, 45. Bradley was an agent for a *special purpose*, and he could not bind his principals beyond the terms of his special authority, which must be strictly pursued. *Smith's Mercantile Law*, 58, 60, in 17 *Law Lib.*, 36, 37. 5 *Johns.*, 58, *Nixon vs. Hyseroot*, and *note (e,)* on *page* 59. 7 *Johns.*, 393, *Gibson vs. Colt.* 5 *Hill*, 634, *Birckhead vs. Brown.* No necessity, however pressing, would authorise the agent to exceed his authority. 7 *Mees. & Wels.*, 596, *Hawtayne vs. Bourne.* But suppose he had express authority, how is it proved? The paper of the 19th of June 1846, was a joint authority to three, which could not be exercised by one or two. *Smith's Mercantile Law*, 60.

2nd. That whatever may be the appellant's remedy against Sanders, he cannot recover in this action against these appellees, even though the jury should find all the facts stated in

his third prayer, because the co-defendants never empowered Sanders to bind them, and never had notice that he had so bound them. Their subsequent acts did not ratify his previous acts, except in so far as those acts had been communicated to them, and this prayer assumes as matter of law from the facts stated in it that Sanders' acts were recognised by his co-defendants, whereas such recognition was a question for the jury. 8 *G. & J.*, 323, *Steam Packet Co. vs. Dandridge.* 3 *Pet.*, 81, *Bell vs. Cunningham.* 9 *Do.*, 629, *Owings vs. Hull.*

3rd. That a knowledge by Sanders of all the facts stated in the appellant's fifth prayer was no notice to his co-defendants, and their subsequent recognition of his employment of counsel, and having taken legal proceedings, was in no way a recognition of his authority to bind them, because, as appears from the testimony of Hall and Davidson, he stated to them that Carter had furnished the security on the bond, and in consideration of his so doing they were to release Carter, pay counsel fees and contribute to the Patterson debt. 8 *G. & J.*, 323. 9 *Pet.*, 629.

4th. That the fifth and sixth prayers of the appellant were properly rejected, because they do not leave the jury to find that Bradley wrote the letter to the appellant on which the suit is founded, but *assume* that the letter was written and that it was received by the appellant. 6 *G. & J.*, 70, *Crawford vs. Berry.* 3 *Md. Rep.*, 294, *Lewis vs. Kramer.* 7 *Do.*, 297, *Balto. & Ohio Rail Road Co. vs. Resley.*

5th. That if the ruling of the court be erroneous, there can be no *procedendo* because of the release by the appellant to Carter. The appellees, if liable to the appellant at all, were so for the default of Carter, and had against him at law a claim for whatever sum they might be compelled to pay the appellant. Carter was equally liable to the appellant, and the release discharges him from responsibilities to appellant, and thus discharges the appellees who were his sureties to the appellant. 2 *Md. Rep.*, 286, *Scott vs. The State.* *Theobald on Principal & Surety*, 114, 115, 252, 253, in 1 *Law Lib.*, 67, 68, 150. *Burge on Suretyship*, 160, 161, 348, 352, 353.

Le Grand, C. J., delivered the opinion of this court.

The record in this case shows the following state of facts: A mercantile firm, under the style and name of Carter & Washington, in the city of Washington, D. C., were indebted to merchants in the city of Baltimore. Washington, by transfer, as it was alleged, had conveyed the joint assets to secure the payment of his own debts to the exclusion of those of his partner, Carter. The creditors of both, in the city of Baltimore, being desirous of having the property appropriated to the payment of the debts of the firm, appointed a committee in the following words, to superintend and guard their interests:

"We, the undersigned creditors of Carter & Washington, agree to contribute, ratably, our proportion of all expenses incurred, (agreeably to the amount of our claims,) in any legal or other proceedings which have or may be taken by A. B. Davidson, C. A. Hall and T. W. Hall, in reference to the assignment and bill of sale made by R. C. Washington, for the benefit of B. F. Gardner and Franklin Gardner; and we do hereby further agree to indemnify them against all loss for any liabilities assumed, or security given by them or by Henry Carter, of the late firm of Carter & Washington, in any further proceedings which may be taken by him or them, under the advice of their counsel, J. H. Bradley, Esq., of Washington. Given under our hands this 19th day of June 1846.

Signed,    Harrison & Co.,

Davidson & Sanders,

Hall, Taylor & Co.,

Camper & Bruff,

Marriott, Marye & Co.,

W. H. Harrison & Co.,

Spilker & Alberti."

In pursuance of this authority Sanders and Thomas W. Hall went to Washington, assuming to act on behalf of their own firms, and as representatives of the other creditors of Carter and Washington, to advise with counsel and take measures to oppose the deed of Washington. They employed Joseph H. Bradley, Esq., as counsel, to file a bill for an injunction and to set aside the deed. Hall returned to Baltimore, leaving

Sanders in Washington. Bradley procured the appellant to go on the injunction bond. The injunction was subsequently dissolved, suit instituted on the bond, and a judgment obtained against the appellant for upwards of three thousand dollars.

Mr. Bradley testifies that he requested the appellant, White, to go on the bond, but he positively refused to do so, unless he had some written evidence of indemnity. Bradley then informed him that both Hall and Sanders had distinctly agreed, that if such security could be got, the creditors whom they represented would indemnify the security; that on the same day, White being in the office of the witness, the latter then, in the presence and with the privity and consent of Sanders, wrote the following letter:

"Mr. W. G. W. White,

*Dear Sir:*—If the judge grants the injunction to-day, Mr. Carter will have to give security of course. It is very important that none of the creditors should join in the bond, for I may want to make them or some of them witnesses. I have their authority for saying, that if this thing is done they will release Carter, and indemnify any one who goes his security. The penalty in the bond will probably be two thousand dollars, or possibly $5000, but the risk cannot be any more than the loss on the postponed sale of goods, and the interest on their value and the expense of keeping them. Under these circumstances I have suggested to Mr. Carter to ask you and Dr. Gunton, as the friend of Mr. Davidson, (or some other gentleman here,) to join him in the bond."

In reply to certain interrogatories propounded to Thomas W. Hall and others on behalf of the appellant, he states in substance, that he, in company with Mr. Davidson, visited Washington city, and there endeavored to get Carter to take legal measures to have set aside the deed of Washington, and, as an inducement, promised to procure a release from his firm and that of Davidson & Sanders, of all liability for what he was indebted to them. That Sanders, who was then the partner of Davidson, went to Washington *without any appointment from the creditors of Carter & Washington constituting him their agent,* for the purpose of taking the place of his partner, the said Davidson. He also denies that any arrange-

ment in regard to the injunction or security obtained for it was assented to by him or his colleagues, Messrs. Davidson and Carter A. Hall, other than that of which the creditors were informed by Sanders, to wit: that Carter should file the bill and find the security, provided the creditors would release him unconditionally and pay the fee of Mr. Bradley.

The answer of Carter A. Hall and that also of Alexander B. Davidson explicitly denies the authority of Sanders to bind the creditors as he sought to do, according to the testimony of Bradley.

This statement of the facts is sufficiently full to present the questions of law arising out of the case.

The theory of the appellant's case is simply this:—he claims to be indemnified for his loss because of the recovery had against him on his bond: *first*, because of a specific contract to that effect; and *second*, that the employment of Bradley, as counsel, to file a bill for an injunction necessarily carried with it authority to do all things essential to its procurement, and, if to such end, a bond was indispensable, he had the right to promise an indemnity to any one who should become security on it, which would be binding on those whom he represented.

As to the first proposition: It involves a question of fact only, to wit, the existence of the contract. Bradley states that Thomas W. Hall and Sanders authorized it; Hall on the other hand denies it. From Sanders we have no response except that which is detailed in the answers of the two Halls and Davidson. Mr. Bradley states that Thomas W. Hall, at an interview had between him, witness and Sanders, "produced a paper and said they were authorized by the creditors who signed that paper to come to Washington and employ said Bradley to enjoin the sale, which was advertised to take place." He did not, however, "read said paper or see the names signed to it." The only written authority to any one to superintend and manage the rights and interests of the Baltimore creditors, of which there is any evidence, is that bearing date the 19th day of June 1846. This must have been the one produced by Thomas W. Hall, and had Mr. Bradley examined it he would have seen it conferred no authority

24    v.8

whatever on Mr. Sanders to employ counsel, or in any other manner to intermeddle with the business. Unless the parties, sought to be held liable, distinctly authorized him to act, anything he might do would not bind them, unless, on *full* knowledge, they recognized and adopted his act. There is no proof whatever in the record that they have adopted the act of Bradley in writing to the appellant, and promising him indemnity with the consent and privity of Sanders, as testified to by Bradley. So far from it they expressly deny Sanders ever communicated to them any such promise as that spoken of by Mr. Bradley. In this state of case if the defendants be responsible at all, it must be because the employment of Bradley, as counsel, conferred on him, as such, the right to bind them to hold any one who might be obtained as security on the injunction bond harmless from all loss which might result from the dissolution of the injunction, or because the action of Sanders and Hall, as testified to by Bradley, is binding on the firms of which they were partners. A consideration of these propositions necessarily assumes that the jury would believe the testimony of Mr. Bradley instead of that of Mr. Hall, which is in conflict with it.

Assuming then the facts to be as testified to by Mr. Bradley, we are of opinion that the defendants, either in whole or part, are not responsible to the appellant. The employment of counsel does not confer on him, *ex necessitate*, the right to bind his clients to indemnify a third party who may become security in the progress of the suit. The power of an attorney is very extensive, but it is not equivalent to that of his client. *As such*, it has been doubted, to say the least of it, by high authority, whether he may make a compromise, although he may submit a cause to arbitration. *Holden and others, vs. Parker, 7 Cranch's Reports,* 434. It is true, if the compromise be *bona fide* and work no considerable hardship, courts will be slow to disturb it, and they will refuse to do so when it has been acquiesced in with a full knowledge of the facts. In the case before us, there is no evidence the facts were ever communicated to the defendants; so far from it, those of them who have been examined expressly deny all knowledge of the

agreement between Bradley and appellant, with sanction and privity of Sanders. It did not necessarily follow, that the issuing of an injunction required a bond; that was a matter resting in the discretion of the judge who was to order it, and if he did require it and security could not be obtained without an assurance of indemnity, the client should have been so notified.

We do not think the action of Hall and Sanders, as testified to by Bradley, binding on the firms of which they were members, unless they subsequently acquiesced in it. There is not only no proof they ever did so, but on the contrary, the evidence is distinct and uncontradicted, that they neither authorised or subsequently ratified what was done by Mr. Bradley in so far as his engagement with appellant is concerned.

The question involved in the case is not, *strictly* speaking, one of the authority of a partner to bind his co-partners, but one of *agency*. Mr. Bradley was distinctly notified the agency had been created and defined by a written instrument. Had he consulted it, as, perhaps, it was his duty, he would have seen that the agency had been delegated to three persons and not to one. A power to three cannot be executed by one of them; nor is there anything clearer or better established, than that an agent cannot delegate his authority to another, the maxim being *delegatus non potest delegare*.

There is no necessity for our examining in detail the prayers, inasmuch as the views we have expressed plainly indicate our opinion to be, that in the case made by the record the plaintiff cannot recover. We think, however, there can scarce be a doubt, that on the facts contained in it, an action could be maintained against Mr. Sanders and a recovery had against him.

*Judgment affirmed.*

NOTE BY THE REPORTER.—The case of *Woolfolk vs. Baltzell*, referred to in argument in this case, was an action of *assumpsit* by Jacob and Charles Baltzell against Woolfolk, brought in Baltimore county court, in 1834. The *fourth* count in the *nar* charges, that defendant, in consideration that plaintiffs, at his request, would sell goods to one Hutchinson on credit, undertook and promised the plaintiffs to guarantee the payment, eventually, to them of the amount of the bill for such goods, and that relying on this promise of defendant, the plaintiffs did sell goods to Hutchinson to the amount of $1187.36, for which he failed to pay, &c.

*1st Exception.* The plaintiffs offered in evidence the bill of goods sold by them to Hutchinson, on the 16th of February 1832, amounting to $1187.36, at the bottom of which was the following guaranty, signed by the defendant, Woolfolk: "I hereby guaranty, eventually, the payment of $1187.36, amount of Mr. Hutchinson's bill of this date." They also offered in evidence Hutchinson's promissory note to them for this sum, payable in six months, and then offered to prove that Woolfolk, before the goods were sold to Hutchinson, agreed to endorse Hutchinson's note for the amount of the purchase, and that the goods were sold on this assurance; but that afterwards the plaintiffs, at Woolfolk's request and on his assurance that he did not design thereby to change his responsibility, consented to accept the guaranty above stated, and also that Woolfolk admitted Hutchinson's death and the insolvency of his estate. The defendant objected to this proof, on the ground that it went to set aside or materially vary the written agreement alleged to have been entered into at the time the goods were sold, but the court, (MAGRUDER and PURVIANCE, A. J.,) overruled the objection and the defendant excepted.

*2nd Exception.* The defendant prayed the court to instruct the jury, that the plaintiffs are not entitled to recover:—1st, because the promise and undertaking of the defendant was a promise to answer for the debt or default of another, and the agreement, or some memorandum or note thereof upon which the action is brought, is not in writing, signed by the party now sought to be charged therewith; and 2nd, because if the said promise and undertaking is in any manner or under any circumstances binding on the defendant, yet the plaintiffs are not entitled to recover unless they had used all due diligence and proper means to collect the same from Hutchinson, and there is no evidence that they did so. This prayer the court refused and the defendant excepted.

*3rd Exception.* The defendant prayed the court to instruct the jury, that the plaintiffs are not entitled to recover in this action upon the evidence under either count, which instruction the court gave as to all the counts except the fourth, as to which they overruled the objection of the defendant and decided that there was evidence to go to the jury upon this count. To this ruling the defendant excepted.

The verdict and judgment were in favor of the plaintiffs and the defendant appealed. The judgment was *affirmed* by the Court of Appeals at its June term 1839.