THOMAS P. SMITH *vs.* ELLEN M. ABBOTT.

SAME *vs.* GORDON ABBOTT, executor.

Suffolk. March 24, 1915. — May 22, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Agency,* Scope of authority. *Attorney at Law. Evidence,* Admission by silence, Self-serving statement. *Frauds, Statute of.*

A general power of attorney under seal, which, after a detailed recital of authority as to various matters conferred upon the attorney, states that he is given power "generally to do all acts and take all steps which in his judgment are necessary, convenient or expedient in the management of" the client's "property and affairs, although the matter should require more special authority than is herein contained, hereby giving my said attorney full power to act for me and in relation to my affairs, business and property as fully and with like effect as I could act if personally present," does not confer upon the attorney power to delegate his power to another unless a special provision to that effect is contained in its provisions or it appears from the nature of the agency that the parties contemplated that the employment of such agents would be necessary.

Each of two owners of a building in a city by separate instruments gave a general power of attorney to a certain person to manage the property for them, one instrument specifically conferring a power of delegation of authority, and the other omitting such a provision. The attorney gave to a second person in the name of both of his principals a power of attorney which purported to confer a power of delegation and substitution. The second attorney employed an attorney at law to collect the rent from a general lessee of the building and to eject such lessee for non-payment of the rent. In the course of negotiations with the general lessee, the attorney at law made an oral agreement on behalf of his principals that, if the general lessee would surrender his lease, they would

indemnify him against loss by reason of claims by sublessees under leases which the general lessee had given. *Held*, that by reason of the failure of one of the owners specifically to confer a power of delegation and substitution, no such authority could be conferred upon the second attorney, that therefore the attorney at law did not derive from the powers of attorney any authority to make the agreement of indemnity, and that it could not be enforced against the owners of the building.

The mere employment of an attorney at law by the owner of a building to enforce the collection of rent due from a lessee or the ejectment of the lessee does not give to the attorney at law power to make with a general lessee of the building in behalf of his client and without the client's special consent an executory agreement to indemnify such general lessee against any loss he may suffer by reason of claims of sublessees under leases given by him.

*It seems* that an attorney at law by his general employment in a certain matter is not given authority to make an executory contract in behalf of his client in the nature of a compromise of his client's demand.

In an action for a breach of an alleged contract, a mere acknowledgment of the receipt of a letter from an attorney for the plaintiff and the referring of the writer to an attorney at law, the acknowledgment and reference being in a reply to the letter by a person purporting to act for the defendant, do not make the letter thus received admissible in evidence against the defendant, especially where it contains self-serving statements of the plaintiff's views of the relations of the parties and is introduced to show a ratification by the defendant of an unauthorized agreement made by his attorney.

An oral agreement that a surrender of a lease of land shall operate, as between the lessor and the lessee, as an assignment of the lease so that the lessor shall stand in the lessee's stead as to sublessees, is inoperative by reason of the provisions of R. L. c. 127, § 3.

TWO ACTIONS OF CONTRACT for breach of alleged oral agreements to hold the plaintiff, a lessee of property in Boston owned by the defendants, harmless as to claims by sublessees if he would surrender the lease, which he did. Writs dated December 4, 1911.

In the Superior Court the cases were tried together before *Stevens*, J. The material portion of the power of attorney given to Gordon Abbott by Elizabeth S. Bangs, the testatrix of the defendant in the second action, was as follows:

"Know all men by these presents that I, Elizabeth S. Bangs of Boston in the County of Suffolk and Commonwealth of Massachusetts, do hereby constitute and appoint Gordon Abbott of said Boston to be my true, sufficient and lawful attorney, for me and in my name and for my use, to sign, seal, execute and deliver any deed or deeds of any and all of my real estate, wheresoever situated; to make, execute and deliver lease or leases of the whole or any part of the same; to make contracts concerning any or all of my personal or real estate; to sell, transfer and deliver any

and all of my personal property, including stocks, bonds or other muniments of title, and to sign, seal, execute and deliver any and all papers, deeds or instruments necessary, proper or convenient therefor; and in my name and for my use to make subscriptions for stocks, bonds or other securities, and to collect dividends, rents, profits, or any income whatsoever belonging to me; and in my name and stead to collect any and all claims and demands of every nature and description which I may now or hereafter have against any person, persons or corporation whatsoever, and on my behalf to sue for any and all sums of money now or hereafter due me, or for any rights that I may now or hereafter have, in any court of law or equity; and in my name and for my benefit to appear and answer and defend any action or actions, or suits either in law or in equity which may be brought against me in any court or courts of judicature, or to which I may be a party. Also to submit any matter in dispute to arbitration and to settle, adjust and compromise all claims and demands in which I am or may in the future become interested.

"And I further constitute and appoint said Abbott to be my true, sufficient and lawful attorney for me and in my name to make and endorse checks, notes and drafts; and, in his discretion, to transfer and deliver any of my property as security for any notes or obligations that he may make in my name and on my behalf; and to make any contract or contracts concerning the services of persons, and to terminate the same; to appoint one or more substitutes under him, under any power contained herein and the same to revoke at his pleasure; and generally to do all acts and take all steps which in his judgment are necessary, convenient or expedient in the management of my property and affairs, although the matter should require more special authority than is herein contained, hereby giving my said attorney full power to act for me and in relation to my affairs, business and property as fully and with like effect as I could act if personally present."

The power of attorney given to Gordon Abbott by Ellen M. Abbott was like that given by Elizabeth S. Bangs excepting for the omission from the second paragraph of the words, "to appoint one or more substitutes under him, under any power contained herein and the same to revoke at his pleasure."

The other material facts are stated in the opinion. At the close of the evidence the judge ordered verdicts for the defendants and reported the cases for determination by this court.

*T. W. Proctor,* (*A. P. Teele* with him,) for the plaintiff.

*M. J. Dwyer,* (*B. E. Eames* with him,) for the defendants.

BRALEY, J. The plaintiff's cause of action rests upon the parol agreement alleged to have been made by the plaintiff, the lessee, with Charles H. Tyler, Esquire, acting as counsel for the lessors when the lease was determined for nonpayment of rent and the premises were surrendered. By the re-entry which followed the plaintiff's leases to subtenants would at once terminate, and, even if they attorned to the owners, the plaintiff would become liable in damages for breach of the covenant for quiet enjoyment. *Casassa* v. *Smith,* 206 Mass. 69.

It was to protect himself from this liability that in consideration of the surrender, as he testified, the agreement of indemnity was entered into, and for the purposes of decision his testimony may be taken as true, as the jury could have believed him notwithstanding the evidence in contradiction introduced by the defendants.

But if, without deciding, it is assumed that what was said during the negotiations could be found to be an unqualified promise to indemnify and save the plaintiff harmless from liability to the sublessees, and the judgment recovered by one of them in *Casassa* v. *Smith,* 206 Mass. 69, after the lessors had been properly vouched in to defend, entitled the plaintiff to sue for damages, they never became bound unless Mr. Tyler was authorized to make the contract in their behalf. The lessors and owners in making the lease and in the collection of the rent and the management of the premises acted through Gordon Abbott, their duly appointed attorney. And from his evidence the jury could have found that the respective powers of attorney from the defendant, Ellen M. Abbott and Elizabeth S. Bangs, since deceased testate and of whose will Gordon Abbott is executor, which were given after the date of the lease, "were practically a duplication of the earlier powers" of attorney, copies of which are part of the record. It would follow from this finding and an examination of the copies that the power of attorney under seal, given by him in their joint names to Charles E. Cotting, while in accordance

with the instrument of Bangs, permitting him to "appoint one or more substitutes under him," was unauthorized as to Ellen M. Abbott by whom no power of delegation had been conferred. The trust and confidence reposed in him by the terms of the power, where he was to exercise his discretion and judgment in the performance of his duties, could not be delegated to another without the consent of his principal, unless from the nature of the agency it appeared that the parties contemplated that the employment of subagents would be necessary; a condition which does not appear in the case at bar. *Appleton Bank* v. *McGilvray,* 4 Gray, 518, 521. *Dorchester & Milton Bank* v. *New England Bank,* 1 Cush. 177.

But having been given full authority by each principal to manage and convey the property, and if necessary to terminate the lease for breach of condition, the jury also could find from his evidence that upon being informed of the plaintiff's failure to pay the rent, which had fallen into arrears, he directed Cotting to employ counsel, "to try and collect the back rent, and, failing the success in that, to terminate the lease."

It is undisputed that Cotting accordingly retained Mr. Tyler, by whom an action of ejectment was brought in which judgment, with the plaintiff's consent, was not obtained until after the premises had been surrendered, under the agreement for termination, indorsed on the lease and executed by the plaintiff and the lessors through their attorney, Abbott.

While the jury could have found from the plaintiff's evidence that Mr. Tyler informed Cotting of the negotiations and the proposed agreement, yet it is plain that Cotting could not empower Mr. Tyler to bind the lessors. Nor could the counsel under his retainer make an executory contract of indemnity in the nature of a compromise of their demands which would be binding on his clients. *Lewis* v. *Gamage,* 1 Pick. 347. *Shores* v. *Caswell,* 13 Met. 413. *Riley* v. *Boston Elevated Railway,* 195 Mass. 318, 322. *Pomeroy* v. *Prescott,* 106 Maine, 401. 21 Ann. Cas. 574. See note, page 577, for a full collection of cases.

The lessors' right to possession and the termination of the lease did not depend upon the making of the agreement, but upon the proceedings in ejectment to which the plaintiff at the time of the agreement admitted that he had no defence. It was not

even a step in the regular course of litigation, of which the giving of a bond of indemnity in the client's name to an attaching officer, or to a third party as security during the action, are illustrations. *Ford* v. *Williams,* 13 N. Y. 577, 586. *Swartz* v. *D. S. Morgan & Co.* 163 Penn. St. 195. *Clark* v. *Randall,* 9 Wis. 135. Compare *White* v. *Davidson,* 8 Md. 169.

But as an unauthorized agreement or compromise may be ratified by the client, the plaintiff contends that the letter of his attorney to Gordon Abbott, nearly six years after the transaction had been closed, reciting the agreement and the conditions under which it was made was admissible as proof of ratification. *Cohen* v. *Jackson,* 210 Mass. 328. The jury undoubtedly could have found that the letter was in response to Abbott's request made after an interview with the attorney when he stated his client's demands. But neither Abbott's failure to answer this letter, nor the reply acknowledging its receipt and referring the writer to counsel, written by Cotting, because of Abbott's absence from the country, to the second letter requesting an answer, is evidence of an assent to the self-serving declarations found therein supporting the plaintiff's claims. *Perry* v. *Pye,* 215 Mass. 403, 411. *Pye* v. *Perry,* 217 Mass. 68, 71, and cases there cited. The letters were not in the nature of mutual correspondence between the parties concerning the transactions in dispute, in which their respective claims were stated and admissions made, as in *Stone* v. *Sanborn,* 104 Mass. 319, *Thomas* v. *Wells,* 140 Mass. 517, and *Buffum* v. *York Manuf. Co.* 175 Mass. 471, cited by the plaintiff.

The record moreover does not show that with knowledge of what had been done the lessors, or their attorney, Abbott, accepted the benefits which might be derived from a surrender. If this appeared, there would have been evidence for the jury of acquiescence. *Huston* v. *Mitchell,* 14 S. & R. 307, 309, 310. The action of ejectment, as we have said, was pending, and there is no evidence that when Abbott signed the indorsement he had been informed of the negotiations, or of the agreement, and Cotting's knowledge could not affect the lessors.

To the plaintiff's remaining contention, that by accepting the surrender the defendants as matter of law became bound as assignees of the term to protect the plaintiff from liability to the

sublessees, the short answer is that the declarations contain no count upon the alleged cause of action. It is apparent, however, from the plaintiff's own evidence and the indorsement, which is not impugned, that the premises were surrendered and the lease was not assigned.

But even if susceptible of the plaintiff's interpretation, the agreement, not having been in writing, had only the force and effect of an estate at will and therefore it cannot operate as an assignment. R. L. c. 127, § 3. *Sanders* v. *Partridge*, 108 Mass. 556, 559.

By the stipulation of the parties judgment in each case is to be entered for the defendant.

*So ordered.*