DAVID PODREN *vs.* ELIZA B. MACQUARRIE.

Suffolk. March 7, 1919. — May 24, 1919.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Landlord and Tenant*, Assignment of lease. *Frauds, Statute of. Agency. Evidence*, Of assent. *Estoppel.*

The owner of a building made a lease of it in writing containing a provision that the lease should not be assigned without the consent of the lessor in writing and that for breach of its covenants the lessor might enter and repossess the premises. The lessee afterwards became a trustee under a declaration of trust and, without any

assignment of the lease to himself as trustee, assumed "as trustee, but not individually," to make a lease of a portion of the premises to a storekeeper and later as trustee directed that the storekeeper pay rent to the agent of the owner. The lessee becoming in arrears in payments of rent, the owner entered to dispossess him and gave a second lease in writing of the entire premises to one who caused the storekeeper to be evicted. In an action by the storekeeper against the owner for damages resulting from the eviction, it was *held,* that the action could not be maintained because, there never having been any valid assignment of the original lease by the lessee as an individual to himself as trustee, the plaintiff never received any title and was not rightfully on the premises.

At the trial of the action above described, there were in evidence promissory notes of the trustee, payable to the agent in charge of the premises for the owner, letters from the trustee to the agent and various transactions between them which, it was *held,* were insufficient to show that the original lessee had made an assignment from himself as an individual to himself as a trustee which had been assented to in writing by the owner.

At the same trial, it further appeared that, in a conversation between the plaintiff and the agent for the owner, the agent assured the plaintiff that his lease from the trustee was "all right" and that, relying on that assurance, the plaintiff thereafter paid rent and made repairs. *Held,* that, even assuming that the agent had authority to bind the owner by such statements, the defendant was not thereby estopped to rely on the statute of frauds and to refuse to be bound by the oral assurance of the agent.

TORT, later by amendment, TORT OR CONTRACT, for damages resulting from an alleged wrongful eviction of the plaintiff from premises owned by the defendant and alleged to have been rightfully in the possession of the plaintiff as lessee. Writ dated January 29, 1916.

In the Superior Court, the case was tried before *Jenney,* J. The material evidence is described in the opinion. The judge denied a motion of the defendant that a verdict be ordered in her favor. The judge by agreement of the parties submitted the case to the jury with the understanding that, if the jury found for the plaintiff, the judge would set the verdict aside and report the case to this court and, if this court were of the opinion that there was evidence warranting a submission of the case to the jury, judgment should be entered for the plaintiff in the amount found by the jury; and that, otherwise, judgment should be entered for the defendant.

The jury found for the plaintiff in the sum of $1,200. The judge, in accordance with the stipulation, set the verdict aside and reported the case for determination by this court.

*P. Rubenstein,* for the plaintiff.

*J. W. Spring,* for the defendant.

CARROLL, J.  The defendant made a written lease of the entire building numbered 75 and 77 Broad Street, Boston, to Fred L. Hewitt, for the term of five years beginning March 1, 1913.  The lease provided that it was not to be assigned without the consent of the lessor in writing, and the right was reserved to enter for breach of the covenants and repossess the estate "as of the lessor's former estate and expel the lessee and those claiming under the lessee." Hewitt became trustee of the Briggs Trust, so called, under a written declaration of trust, and "as trustee, but not individually" executed a lease under seal to the plaintiff, of one of the stores in the building, for the term of three years and eight months beginning June 1, 1914.  There was evidence that Abram Hoffecker, the defendant's agent, attended "to all matters connected with the building;" that on July 21, 1915, Hewitt as trustee wrote to the plaintiff directing him to pay the future rent to Hoffecker; and that thereafter for several months the plaintiff paid Hoffecker the rent.

Hewitt did not pay the rent for the building due under the terms of the lease, and on December 30, 1915, the defendant made an entry on the premises for breach of the covenants; and on the same day she made a lease of the entire building for the period of fifteen years from May 1, 1916, to the Kelsey Company.  On January 12, 1916, a notice to quit, signed by Thomas H. King, who purported to have a written lease of the plaintiff's premises for the term of one year from January 1, 1916, from the Kelsey Company, was served on the plaintiff.  After the receipt of the notice, a deputy sheriff saw the plaintiff and told him that if he did not quit the premises he would evict him.  The plaintiff testified that in July, 1915, he showed his lease to Hoffecker and asked him "whether it was all right," and he said it was "as long as I paid the rent;" and relying on this statement the plaintiff made repairs on the store.  There was no evidence that Hewitt the lessee, assigned the lease to the Briggs Trust, or to himself as trustee, and there was no written assent of the defendant to an assignment of the lease to any one.

The plaintiff's declaration is in contract and alleges that the defendant, regardless of her agreement, unlawfully evicted the plaintiff from the premises, to his great damage.  The plaintiff bases his right to recover on the fact that he was in possession

of the premises under a written lease from Hewitt as trustee of the Briggs Trust. The defendant leased the premises to Hewitt. There was no written assignment of the lease from Hewitt to the trust, and the defendant made no agreement with any lessee other than Hewitt; she never consented to the Briggs Trust occupying the premises as the assignee of the lease, and, so far as the plaintiff's rights against the defendant are concerned, he is merely a tenant at will unless Hewitt as trustee of the Briggs Trust derived his title from the defendant. The plaintiff has not shown this: he has not proved that the title ever passed from Hewitt, or that there was any right or title in his lessor to execute a written lease of the premises. Under the statute of frauds (R. L. c. 127, § 3), an estate or interest in land created without an instrument in writing has the force and effect of an estate at will only; and no estate or interest in land can be assigned, granted or surrendered except by an instrument in writing or by operation of law. Having no title under his lease from the trust, even if the other elements necessary to establish his case were shown, the plaintiff cannot recover against the defendant. See, in this connection, *Emery* v. *Boston Terminal Co.* 178 Mass. 172; *Mathews* v. *Carlton*, 189 Mass. 285; *Scotti* v. *Bullock*, 225 Mass. 510.

Assuming that the letters and the promissory notes payable to Hoffecker signed, Briggs Trust, by Fred L. Hewitt, Trustee, and the evidence of other transactions were properly admitted, they are insufficient to show an assignment in writing from Hewitt to the trust, or to himself as trustee.

The plaintiff contends that the defendant is estopped to deny the validity of his title under the written lease, because her agent, Hoffecker, assured the plaintiff that the lease from the trust was "all right" and that the plaintiff thereafter paid the rent and made repairs. The defendant made no written contract with the plaintiff. The plaintiff's lessor had no title, and the oral assurance of the defendant's agent did not make the lease a valid instrument. The statute of frauds prevents the plaintiff from recovering. The defendant is not estopped to rely on her rights and can refuse to be bound by the oral assurance of her agent that the lease was valid, even assuming that he had authority to bind her by such a statement. See *Graves* v. *Goldthwait*, 153 Mass. 268; *Sarkisian* v. *Teele*, 201 Mass. 596, 608; *Sprague* v.

*Kimball,* 213 Mass. 380. In *Nelson Theatre Co.* v. *Nelson,* 216 Mass. 30, relied on by the plaintiff, it was not questioned that the lease had been assigned.

Even if the plaintiff's lease was executed by one who held a title to the entire building, the lease to Hewitt was broken by his failure to pay the rent according to its terms, and the defendant had the right to enter for breach of this covenant. See *Louis K. Liggett Co.* v. *Wilson,* 224 Mass. 456. In answer to this the plaintiff contends that there was a legal surrender of the Hewitt lease to the defendant. Without intimating that there was evidence to support this contention, see R. L. c. 127, § 3; *Smith* v. *Abbott,* 221 Mass. 326, it is sufficient to say that as the plaintiff has not shown that he was possessed of an estate greater than a tenancy at will, he cannot prevail. It also is unnecessary to consider whether there was any evidence of an eviction by the defendant. See *Aguglia* v. *Cavicchia,* 229 Mass. 263.

As there was no evidence to warrant the submission of the case to the jury, judgment is to be entered for the defendant.

*So ordered.*