Maddux *vs.* Bevan, *et al.*

*Judgment reversed, and*
*new trial awarded.*

(Decided 17th February, 1874.)

ALFRED MADDUX *vs.* SAMUEL BEVAN, and others.

*Authority of an Attorney at law — Principal and Agent—Ratification—Accord and Satisfaction.*

An attorney at law, as such, has no power to compromise claims of his client by taking a bond, or any thing except money, in satisfaction of them, or by receiving a less sum or any security for a less sum than is due on them; and such a compromise, if not expressly authorized, will not be binding on the client unless he has, with full knowledge, ratified it. Such a compromise will be governed by the general law of principal and agent.

Ratification by a principal of the act of his agent, may be inferred from acquiescence and the facts and circumstances of each case. Such ratification may be presumed when the acts and conduct of the principal are inconsistent with any other supposition, than that he intended to ratify the transaction, or when he receives and holds the fruits thereof. Even his silence may raise a conclusive presumption, especially where it is either contrary to his duty, or has a tendency to mislead the agent.

The payment and acceptance of a less sum of money in satisfaction of a greater, without a release of the residue, is, in law, no discharge of such greater sum. But if in addition to the part payment, there be some other collateral consideration, such as would support a contract, it is a good accord and satisfaction. Such additional consideration may consist of anything which might be a burden to the one party or a benefit to the other.

A guaranty by a responsible party of a part of the indebtedness of a debtor in failing circumstances, is sufficient consideration to support an agreement by the creditior to relinquish the residue.

APPEAL from the Superior Court of Baltimore City.

The facts are stated in the opinion of the Court.

*Exception* —The plaintiffs prayed the Court to instruct the jury as follows:

1. If the jury shall find from the evidence that the signatures of the defendant Alfred Maddux, and Martin Maddux, upon the bond in suit, are genuine, and that at the time said bond was made, both the defendant and Martin Maddux were citizens of the State of Virginia, and that the defendant was a resident of Virginia during the late war between the States, from the date of June, 1861, to June, 1865, then the said bond is not barred by the Statute of Limitations.

2. If the jury believe from the evidence, that in May, 1857, the plaintiffs were the holders of the single bill sued on, upon which there was then due a balance of $648, or thereabouts, and were also the creditors of Martin Maddux to the extent of $1634, or thereabouts, for $1000, of which they held the over-due joint obligation of said Martin Maddux and one Wm. D. Bartlett, and for the balance of which they held the over-due individual obligation of said Martin Maddux alone. And if the jury shall further find that the plaintiffs had, previously to said May, 1857, placed all their said claims against Martin Maddux, amounting in the aggregate to $2272, or thereabouts, in

the hands of Messrs. Barton & Williams, attorneys at law, for collection, and that in May, 1857, while said claims were still in the hands of said Barton & Williams, as their attorneys, for collection, said Barton & Williams made a settlement with said Martin Maddux for so much of said indebtedness as was represented by said joint obligation of said Martin Maddux and said Wm. D. Bartlett, for $1000, and said individual obligation of said Martin Maddux for $526, with interest thereon respectively, by accepting in lieu of said two last mentioned obligations, and as a payment and satisfaction thereof, four bonds of said Maddux and Bartlett, jointly payable at 9, 18, 27 and 36 months after date, amounting in the aggregate to $1624, or thereabouts, and that said four bonds did not embrace the balance due upon the single bill now sued on, then, notwithstanding such settlement, the plaintiffs are entitled to recover in this suit such balance as the jury may find to be due thereon.

3. If the jury find the facts stated in the aforegoing prayer, and shall further find that Messrs. Barton & Williams made the settlement as testified to by the witness, Martin Maddux, and that the same was intended by them and by said Martin Maddux, to be a full settlement, accord and satisfaction of all the claims of the plaintiffs against him, then in their hands for collection, including the bond now sued on, still the said settlement constitutes no bar to the recovery of whatever balance the jury may believe to be due upon the single bill sued on in this case, unless the jury believe from the evidence that Messrs. Barton & Williams were expressly authorized by the plaintiffs to make such settlement, and to receive said bonds for $1624, in payment and extinguishment of the plaintiffs' claims against said Maddux for $2272, or thereabouts, or unless the jury believe from the evidence that the plaintiffs were informed by Messrs. Barton & Williams of such settlement, and of the terms thereof, and

with full knowledge of all the facts, ratified and confirmed the same.

4. That there is no evidence in this case that the plaintiffs ever authorized the said Barton & Williams to accept said four bonds for $1624, or thereabouts, in satisfaction of their claim against Martin Maddux, amounting to $2272, or thereabouts, and no evidence that Messrs. Barton & Williams ever informed the plaintiffs that they had made any such settlement as testified to by the witness, Martin Maddux, and that the plaintiffs ever ratified and confirmed the same.

5. If the jury find from the evidence, that in May, 1857, the plaintiffs were creditors of Martin Maddux to the amount of $2272, or thereabouts, and that the settlement of said indebtedness was made between them through their attorneys Barton & Williams, and said Martin Maddux, as testified to by him, and the four bonds mentioned by him, amounting to $1624, or thereabouts, were accepted from him in full settlement of the plaintiffs' whole claims, still said settlement being for a sum less than the full amount of the plaintiffs' claims, does not sustain the plea of accord and satisfaction interposed by the defendant in this suit; and that, therefore, notwithstanding such settlement, the plaintiffs are entitled to recover such balance, over and above the amount of said four bonds, as the jury may believe to be due upon the single bill sued on in this case.

6. If the jury believe that the four bonds, amounting to $1624, spoken of by the witness Maddux, have never been paid, then the delivery of said bonds to Barton & Williams, attorneys of the plaintiffs, does not extinguish the plaintiffs' claims against said Martin Maddux, for which the jury may find said four bonds were given, unless the jury further find that there was an express agreement that the mere delivery and acceptance of said four bonds were to be treated as payment of said claims,

whether the said four bonds should ever be paid or not.

The defendant prayed the Court to instruct the jury as follows :

That if they find that Martin Maddux was indebted to the plaintiffs in the sum of about $2000, and that $1000 of that amount was represented by a note of Martin Maddux, endorsed by W. B. Bartlett, and part of the residue by the bond of the defendant sued upon, and about $500 of said residue was unsecured ; and if they shall further find that the plaintiffs employed Barton & Williams to sue Martin Maddux and Bartlett, on the note for $1000, and that while said suit was pending- the said Martin Maddux had the conference with Mr. Barton, testified to by said Martin, to effect a settlement of the whole claim of the plaintiffs against him, including the part for which the plaintiffs held said bond of Alfred Maddux as collateral security, and requested said Barton to procure from the plaintiffs their whole claim, for the purpose of effecting said settlement, and that said Barton afterwards informed said Maddux that he had received said entire claim from the plaintiffs, and that in fact said Barton had in his hands the whole of said claim, including a statement of the amount secured by said bond of the defendant, and that plaintiffs gave no other instructions to said Barton with reference to the part of their claim secured by said bond than they gave as to the residue of said claim ; and if they shall further find, that after said Barton informed said Martin that he had written to said plaintiffs for their claim, for the purpose of making a settlement of the whole, he agreed with said Martin that if said Martin would procure for the plaintiffs the four notes endorsed or secured by said Bartlett for about $1600, mentioned in evidence, the plaintiffs would accept the four notes, so endorsed or secured in full satisfaction and payment of their whole claim against said Martin, including the part thereof secured by said bond of the defendant ; and if they shall

further find that said Bartlett was at the time security for only $1000, and that said Martin Maddux and the said defendant had at the time failed in business, and were unable to pay their debts; and if they shall further find that said Martin accepted said propositions, and did procure said four notes so secured by said Bartlett, and delivered them to said Barton under said agreement, and that they were accepted by him in full satisfaction of the whole amount due by said Martin to the plaintiffs, and that the plaintiffs received said compromise notes and now claim the same, then there is evidence from which the jury may find that there was a good and legally sufficient accord and satisfaction between the plaintiffs and Martin Maddux, of the debt for which the plaintiffs held said bond of the defendant as security, and the plaintiffs are not entitled to recover.

The defendant also excepted specially to the second prayer of the plaintiffs upon the ground that there was no evidence legally sufficient to go to the jury to support said prayer.

The Court granted all the plaintiffs' prayers, and rejected the prayer of the defendant, and overruled his special exception.

To the granting of the prayers of the plaintiffs, and to the rejection of the prayer of the defendant, and refusal to sustain his special exception, the defendant excepted, and verdict and judgment being for the plaintiffs for $773.50, he took this appeal.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ROBINSON, J.

*Archibald H. Taylor* and *William A. Fisher*, for the appellant.

The third prayer, apart from other objections to it, was calculated to mislead the jury. It is entirely incon-

sistent with the second and with the fifth and sixth instructions.

The second instruction which was granted, assumes that the settlement between Martin Maddux and Barton did not include the debt secured by the bond sued upon, and that the plaintiffs were therefore entitled to recover.

The third prayer requires the jury to find the same facts as in the second prayer, but also the further fact, wholly inconsistent with the fact assumed in the second prayer, that the settlement was intended by Maddux and Barton to include the bond sued on. How could the jury find that the settlement did not include the bond sued on under the second prayer, and that it did include it under the third?

But the third prayer is still more inconsistent with the fifth and sixth.

The third prayer admits that the settlement testified to by Martin Maddux would bar the recovery in this suit, provided Barton & Williams had authority to make it.

The fifth prayer instructs the jury that even if the settlement was made by the plaintiffs through Barton & Williams, and even if it included in its terms the debt secured by the bond sued upon, yet the settlement is no bar.

By the second prayer the jury might find for the defendant, if they believe that the settlement was made as testified to by Martin Maddux, provided they found that Barton & Williams had authority to make it.

By the fifth prayer they were told that they must find for the plaintiffs under precisely the same hypothesis of facts.   Which instruction were they to obey?

But the sixth instruction leaves the jury in still greater doubt as to what the law of the case is, for it distinctly re-asserts the doctrine laid down in the third prayer, and contradicts the law of the fifth prayer. Such uncertainty and contradiction in the instructions could not fail to con-

fuse and mislead the jury. If all the instructions be correct the jury could not have rendered a verdict without violating some of them.

The real questions in the case are two :

1st. Was the agreement between Martin Maddux and Barton & Williams, such an agreement as would operate to extinguish the debt for which the plaintiffs held the bond sued upon as collateral security ?

2nd. Was there evidence to go to the jury that Barton & Williams had authority to make the agreement, or that if made by them without authority, the plaintiffs afterwards recognized and ratified it ?

In support of the first proposition reference may be made to the following decisions : *Creager vs. Link*, 7 *Md.*, 265 ; *Booth vs. Campbell, Trustee of Harper*, 15 *Md.*, 573 : *Boyd vs. Hitchcock*, 20 *Johnson*, 76 ; *Le Page vs. McCrea*, 1 *Wendell*, 172 ; *Kellogg, et al. vs. Richards, et al.*, 14 *Wendell*, 116.

As to the right of attorneys to make compromises for their clients, see *Fray vs. Voules*, 1 *E. & E.*, (102 *Eng. C. L.*,) 839 ; *Chown vs. Parrot*, 108 *Eng. C. L.*, 74; *Prestwich vs. Poley*, 114 *Eng. C. L.*, 806; *Benedict vs. Smith*, 10 *Paige*, 129, 130 ; *Gordon vs. Coolidge*, 1 *Sumner*, 544 ; *White vs. Davidson*, 8 *Md.*, 186.

*Innes Randolph*, for the appellees.

The third prayer is based upon the proposition that an attorney as such has no power to bind his client by a compromise of a claim which he holds for collection, unless he has express authority from his principal to do so, or unless his principal subsequently ratifies the same with full knowledge. *White vs. Davidson*, 8 *Md.*, 186 ; *Holker vs. Parker*, 7 *Cranch*, 436, 449, 453 ; *Campbell vs. Booth*, 8 *Md.*, 107 ; *Howard vs. Carpenter*, 11 *Md.*, 279 ; *Doub vs. Barnes*, 4 *Gill*, 20 ; *Kent vs. Ricards*, 3 *Md. Ch. Dec.*, 393–4.

The fifth prayer, after the granting of the fourth, was unnecessary, and even if unsound, does not affect the case. The defendant is not damaged, therefore, even if the Court was in error as to the fifth and sixth instructions. The appellees, however, contend that both of those propositions are true, and cite the following:

For the fifth prayer. *Hardy vs. Coe*, 5 *Gill*, 189 ; *Jones vs. Ricketts*, 7 *Md.*, 108.

For the sixth prayer. *Berry vs. Griffin*, 10 *Md.*, 27–31.

MILLER, J., delivered the opinion of the Court.

One of the questions presented by this appeal relates to the authority of an attorney, over claims of his client placed in his hands for collection. In *White vs. Davidson*, 8 *Md.*, 186, this Court has said, "the power of an attorney is very extensive, but it is not equivalent to that of his client. *As such*, it has been doubted, to say the least of it, by high authority, whether he may make a *compromise*, although he may submit a cause to arbitration. *Holker, et al. vs. Parker*, 7 *Cranch*, 436. It is true if the compromise be *bona fide*, and work no considerable hardship, Courts will be slow to disturb it, and they will refuse to do so when it has been acquiesced in with full knowledge of the facts." In the case in the Supreme Court there referred to, Ch. J. MARSHALL says, "although an attorney at law, merely as such, has strictly no right to make a compromise, yet a Court would be disinclined to disturb one, which was not so unreasonable as to be exclaimed against by all, and to create an impression, that the judgment of the attorney has been imposed on or not fairly exercised in the case."

In our opinion, the weight of authority in this country is, that an attorney as such has no power to compromise such claims by taking a bond or any thing except money in satisfaction of them, or by receiving a less sum or any security for a less sum than is due on them, without ex-

press authority from the client to that effect, and such compromise will not be binding on the client, unless he has with full knowledge ratified it. Ratification may be inferred from acquiescence, and the facts and circumstances of each case. It is also well settled that a principal cannot ratify a transaction in part, and repudiate it as to the rest; he must either adopt the whole or none; and hence the general rule is deduced, that where a ratification is established as to part, it operates as a confirmation of the whole of that particular transaction. *Story on Agency*, sec. 250. This rests upon the clear principle of right and justice, that a party cannot accept and confirm so much of a contract made by one purporting to be his agent, as he shall think beneficial to himself, and reject the remainder. 1 *Parsons on Cont.*, 46, 47. As to the general rules of law on this subject, there is no difficulty; but here, as ever, the difficulty lies in their application to the circumstances of particular cases. ·

In this case, the suit is against Alfred Maddux, on his single bill for $795.50, dated January 11th, 1855, payable on or before January 11th, 1856, with interest, to his brother, Martin Maddux, and by the latter assigned to the plaintiffs, who received thereon the sum of $200 on the 11th of March, 1856, and in this action claim the balance with interest.

The facts and circumstances of the case, as disclosed by the evidence, will warrant, according as a jury may regard them, legitimate inferences on either side, of several important and vital questions. But, it appears from the uncontradicted testimony, that Martin Maddux, then engaged in business in Fauquier County, Va., came to Baltimore in April, 1855, and purchased from the plaintiffs, merchants of that city, goods to the amount of $1095.54, on which he paid $100 cash, and gave and assigned to them the bond sued on as collateral security for the bill; that afterwards in June, he made another small

purchase of five or fifteen dollars, and in October following paid $200 on account of the April purchase, and bought as agent for his wife, another bill of goods amounting to $1526, for which he passed to the plaintiffs, a note for $1000, payable in twelve months, signed by himself and his father-in-law, William E. Bartlett, and gave them his own note as agent for his wife, for $556, the balance of the purchase with interest on it for six months. In 1857, the plaintiffs sent to Barton & Williams, attorneys in Winchester, Va., these two notes of $1000 and $556 for collection, and at the same time, or subsequently, also sent them for collection a statement, showing the balance due on the account for which they held the bond sued on as security, but there is no positive proof they ever sent the bond itself to these attorneys. Thus far there appears no important conflict in the testimony. It is also clear that Barton & Williams made a compromise or settlement with Martin Maddux, under which they received from him his four notes or bonds on time, with Bartlett as security thereon, amounting to about $1625. These notes they sent to the plaintiffs who received them, retained them, and have since, as we infer from the testimony, presented them as claims against Bartlett's estate. The aggregate amount of these notes was less by more than $600 than the sum actually due the plaintiffs, including that secured by the bond in suit. There is no direct proof the plaintiffs ever expressly authorized their attorneys to make any settlement or compromise, but it is beyond dispute a compromise was made. Whether it in fact embraced the debt secured by this bond, and if it did, whether there was evidence from which the jury could be left to infer, and find a confirmation or ratification of it by the plaintiffs, are the questions mainly controverted in the case, and raised by the exception to the rulings of the Court upon the prayers offered on both sides. These we shall now consider in their order.

It is conceded there was no error in granting the plaintiffs' first prayer on the question of limitations. Nor do we find any error in the granting of their second prayer. It proceeds upon the assumption, the jury might find that the compromise actually made, did not embrace the indebtedness secured by this bond, but only the $1000 and $556 notes, and in that event there can be no question of the plaintiffs' right to recover. The special objection appearing by the record to have been made to this instruction, is that there is no evidence legally sufficient to go to the jury to support it. In our judgment, after a careful consideration of the testimony bearing on that subject, there is evidence from which the jury may be allowed to infer and find the facts which this prayer states. We do not propose to comment upon the testimony in this respect, or to intimate that the jury may not properly find the compromise was as comprehensive as contended for by the appellant, but merely say it is not a case in which they should be instructed that there is no evidence legally sufficient to support the hypothesis of the prayer.

Except in the particulars to be presently noticed, we find no error in the granting of the plaintiffs' third prayer. That a compromise and settlement such as this prayer submits to the finding of the jury, would be no bar to a recovery on this bond, unless they should find the plaintiffs expressly authorized their attorneys to make it, or with full knowledge of all the facts, ratified and confirmed it, is a proposition which cannot, in our judgment, be successfully controverted. The authorities already referred to sustain it, and many others might be cited in its support. It is not within the scope of his usual employment for an attorney thus to settle and compromise the claims of his clients; nor does the client hold him out to the public or to his debtors as having competent authority for that purpose. The authority with

which he is clothed by his office, and which the public know and recognize him as possessing is to enforce the claims of his clients by resort to legal proceedings, and through the instrumentality of the constituted tribunals of justice. He has no implied authority to compromise and settle claims in this way. If, therefore, he makes, without express authority, a compromise like the present, it is unauthorized, and must be governed by the general law of principal and agent, that in such case the former is not bound unless after full knowledge of the transaction he ratifies it. *Story on Agency, sec.* 244.

But it is by no means necessary there should be any positive and direct confirmation. By far the largest class of ratifications of unsealed contracts arises by implication from the acts and proceedings of the principal *in pais*. It may be presumed whenever the acts and conduct of the principal are inconsistent with any other supposition than that he intended to ratify the transaction. In many cases it may be inferred from his receiving and holding the fruits of the contract. Long acquiescence also, without objection, and even silence of the principal, will, in many cases, amount to a conclusive presumption of the ratification of an unauthorized act ; especially where such acquiescence is not otherwise to be accounted for, or such silence is either contrary to the duty of the principal or has a tendency to mislead the agent. Thus, for example, if an agent without authority should compromise a debt of his principal, who after knowledge of the fact should make no objection, but acquiesce for a length of time in the act, he will be bound by it. *Story on Agency, secs.* 253, 254, 255, 255*a.* Numerous other instances of presumed ratifications might be cited, but these will suffice for the purposes of this case. From these well settled principles of the law of principal and agent, it seems clear the plaintiffs were not bound by this compromise if made without express authority unless the jury should

find that after full knowledge of all the facts they ratified and confirmed it. · If the prayer under consideration had stated this legal proposition clearly and broadly there would have been no error in it. But it appears to us to be faulty in two particulars. *First,* it tells the jury if they find the *facts stated in the second prayer,* and shall further find the compromise *did embrace* the debt secured by this bond, then, &c. Now, one of the facts, and, indeed, the main fact left to their finding by the second prayer, is that the compromise *did not* extend to this debt. They were thus required to make two opposite and inconsistent findings, from which the legal result asserted by the prayer would follow. This, in our judgment, was well calculated to mislead and confuse the jury and is a fatal defect in this instruction. *Secondly,* the jury were instructed that the compromise was no bar to the action if made without express authority, unless they believe from the evidence the plaintiffs were informed by *their attorneys* of the settlement, &c. But from the authorities cited it is quite clear it makes no difference whether they gained this information from their attorneys or in any other way. The jury should not have been thus restricted as to the source of information, but should have been allowed to find ratification with knowledge, from all the facts and circumstances of the case as disclosed by the testimony.

There was error in granting the plaintiffs' fourth prayer, by which among other things, the jury were told there was *no evidence* that the plaintiffs ever ratified and confirmed the compromise. In our opinion there is evidence from which the jury might be allowed to infer and find a ratification with knowledge. Here again, it is not our purpose to comment upon the testimony from which this inference may be made, or to intimate an opinion that it ought to be made by the jury. It suffices to say it is not a case which, in this respect, should be withdrawn from their consideration.

There was also error in granting the plaintiffs' fifth prayer. The naked proposition it contains, that the settlement, by taking the four bonds for all the plaintiffs' claims being a settlement for a sum less than the full amount of such claims, does not sustain the plea of accord and satisfaction, may be sound, but it does not thence follow, as the prayer asserts, the plaintiffs are entitled to recover the difference. It is no doubt settled law in this State that where there is nothing more than the simple payment and acceptance of a less sum of money in satisfaction of a greater sum due, without a release of the residue, it is in law no discharge or extinguishment of such greater sum or debt. That was decided in *Geiser vs. Kershner* 4 *G. & J.*, 305 ; *Hardey vs. Coe*, 5 *Gill*, 189 ; *Jones vs. Ricketts,* 7 *Md* , 108 ; *Campbell vs. Booth*, 8 *Md.*, 107, and *same case* in 15 *Md.*, 569. But it is equally well settled by the same authorities, that if in addition to the part payment there be some other collateral consideration, such as in law is sufficient to support a contract, then the agreement to relinquish the residue is not *nudum pactum*, and such collateral consideration superadded to the payment of part is a good accord and satisfaction. Such collateral or additional consideration may consist of any thing which would be a burden or inconvenience to the one party or a possible benefit to the other. There is in this case evidence of such collateral consideration beneficial to the plaintiffs. There is proof that at the time of this settlement both the defendant and his brother Martin had failed in business, while Bartlett was perfectly solvent, and worth $30,000 or $40,000. By the settlement, assuming it to have been made and to be binding on the plaintiffs, they obtained Bartlett as security for a considerably larger amount of their claims than he had before been responsible for. A guaranty by a responsible party of this larger sum, was a possible benefit to the plaintiffs abundantly sufficient to support

an agreement by them to relinquish the residue of their claims not thus secured. It was error, therefore, to state the rule of law contained in this prayer without the qualification to it, which there was evidence to support, and to instruct the jury in effect that the plaintiffs were entitled to recover notwithstanding such evidence.

The plaintiffs' sixth prayer seems to contain a correct legal proposition, but makes no application of it either to the plaintiffs' right to recover or to the grounds of defence, and we are unable to perceive that it has any important bearing upon the case on trial. Suppose the four bonds have never been paid, and that the mere delivery of them to the plaintiffs' attorneys does not extinguish their claims against Martin Maddux "*for which the jury may find said four bonds were given,*" unless they further find there was an express agreement that the mere delivery and acceptance of them should be treated as payment of *such claims* whether the bonds were paid or not, still the jury might find these bonds were given only for the claims on the $1,000 and $556 notes, and in that event the right of recovery on the bond in suit would be wholly unaffected by this proposition; and if, on the other hand, they should find these bonds were also given for and embraced the debt secured by the present cause of action, then the right to recover would depend on the *further question* whether the plaintiffs authorized or ratified such settlement and compromise.

The appellant's counsel have conceded the defendant's prayer is defective, and have not insisted upon it. We therefore forbear the expression of any opinion in regard to it.

*Judgment reversed,*
*and new trial awarded.*

(Decided 17th February, 1874.)

STEWART, J., delivered the following separate opinion :

The principal questions involved in the case, are, whether Barton and Williams, the attorneys employed by the plaintiffs to collect their claims against Martin Maddux did, in fact, make a settlement of only a part, or the whole of them, including the one now in suit, for which the defendant's obligation was given as collateral security. If they made the settlement, including this claim, had they authority from the plaintiffs to that effect ; or have the plaintiffs since, directly, or indirectly, ratified their acts, or to be estopped, from denying the authority, and bound by the settlement, from their having received the notes, taken by the attorneys, and claiming the same, and failing to disavow their acts, as soon as they had notice thereof?

The English authorities have gone very far towards sustaining the power of attorneys, to bind their clients by compromise or other disposition of cases entrusted to them, where there has been no special authority given for that purpose, and no directions to the contrary. *Fray vs. Voules,* 102 *E. C. L.,* 839 *; Chown vs. Parrott,* 108 *E. C. L.,* 74 ; *Prestwich vs. Poley,* 114 *E. C. L.,* 806.

But the American cases do not go to the same extent, and the acts of the attorney making a compromise for his client, are to be taken with some qualification as to its sufficiency to bind the client. He may, or may not, be bound, according to the nature and circumstances of the compromise. Without express authority from their principal, they cannot bind him, by a settlement or compromise, for less than the claim. *White vs. Davidson,* 8 *Md.,* 169 ; *Hacker vs. Parker,* 7 *Cranch,* 436.

But where the attorneys have not authority, if the client, after the settlement, accepts the same, or holds the fruits thereof, he is estopped from denying original authority.

He is not permitted to confirm the settlement by claiming its benefits, and repudiate the authority by which it

was effected.　He must either adopt or reject it—ratify the whole, or no part thereof.　If the principal has received the proceeds, and does not disavow the acts of his agent, as soon as he can, after notice thereof, he makes them his own.　There would be no justice in allowing the principal to take advantage of the acts of his agent, or attorney, as he might think proper or convenient, and yet suffer him to repudiate the authority.　'

The general rule is well settled, that the ratification in part, operates to confirm the whole.　*Story on Agency, secs.* 250, 253, 255 ; *Chitty on Con.,* 219 ; 1 *Parsons on Con.,* 44 and 46 ; 10 *Paige's Chy. R.,* 130 ; *Newell vs. Hurlburt,* 2 *Vermont,* 352.

According to this well settled principle, applied to the respective prayers of the parties, the first prayer of the plaintiff was abandoned ; the second prayer of the plaintiff was unobjectionable and properly granted.　According to its hypothesis of facts, (and there was evidence legally sufficient to go to the jury, to sustain the same, and to be determined by them,) it submitted to the jury, the question : that if the settlement made by the attorneys, did not embrace the cause of action sued on, the plaintiffs are not hindered from recovery.

It was the province of the jury from all the testimony, to make the proper deductions, and find accordingly.

The third prayer of the plaintiffs ought to have been refused.

It was a sufficient ground for its rejection, that it omitted any reference to the conduct of the plaintiffs, which might have the effect to show their acquiescence in what had been done by their attorneys, and the legal effect of the receipt and claim by them of the notes of Bartlett and Maddux, taken in the settlement by their attorneys.

These were matters to be considered by the jury ; and might bind the plaintiffs by way of estoppel, or as a rati-

fication in part, operating upon the whole ; and thus affect their demand upon the defendant in this suit.

The plaintiffs' fourth prayer was objectionable and ought not to have been granted, because it might mislead the jury who were bound to base their verdict upon conclusions from all the facts.

Although the attorneys of the plaintiffs might not have been authorized to make the settlement referred to, and the plaintiffs not bound by it; yet, if the plaintiffs did not in fact disavow the same, as soon as they had knowledge thereof, but received and held on to the notes of Maddux and Bartlett, presented by the attorneys and given in full payment of all their claims, including the note sued on, and claimed them at the time of the suit, they were effectually and justly estopped from denying the authority of their attorney to make such settlement.

The plaintiffs' fifth prayer ought to have been rejected.

If the attorneys knowingly took notes better secured, although for a less sum than the debt due, that would be evidence of a compromise and of accord and satisfaction.

The taking of good paper for doubtful or desperate, would be a sufficient consideration for such contract of settlement, and would not conflict with the rule that the mere payment of a less sum agreed to be received in full satisfaction of a larger debt without release, is not binding as payment in full or as accord and satisfaction. The rule is a technical one, and the Courts allow very slight consideration to support a settlement, for a less sum than the amount of the claim.

The *possibility* of benefit to the party relinquishing his further claim, will be sufficient to prevent the agreement from being considered a mere *nudum pactum*. See references below.

The rule is also confined to receipts of money. The receipt of any article of property of less than half the

value, would constitute a perfect defence. *Geiser vs. Kershner*, 4 *G. & J.*, 305; *Hardey vs. Coe*, 5 *Gill*, 189; *Jones vs. Ricketts*, 7 *Md.*, 116; *Creager vs. Link*, 7 *Md.*, 259; *Campbell vs. Booth*, 8 *Md.*, 115; *Kellogg vs. Richards*, 14 *Wendell*, 119.

Where there is a *collateral* consideration to support the agreement to relinquish, it is not *nudum pactum*, and the payment in part under such circumstances, is a valid accord and satisfaction. *Booth vs. Campbell*, 15 *Md.*, 569. The receipt of additional security on condition, that a portion of the debt shall be relinquished, is a good discharge, and full accord and satisfaction. *Kellogg vs. Richards*, 14 *Wendell*, 119.

If the claims were in doubt and the defendant's circumstances questionable, the receipt of the notes, although at a large reduction, with Bartlett, supposed to be good, as security, there can be no doubt of their being a valid consideration for the exchange of paper.

The plaintiffs' sixth prayer was inconsistent with the theory of the second prayer, according to which the four bonds referred to in the sixth prayer, might have extinguished the claims of the plaintiffs against Martin Maddux, if the jury found according to the hypothesis of that prayer, without affecting the claims now in suit.

The prayer was therefore irrelevant to the enquiry before the jury, as to the liability of the defendant, and was erroneously granted.

If the hypothesis of facts as presented in the defendant's prayer, was found by the jury to be correct, they constituted a good and sufficient accord and satisfaction of the plaintiffs' claim, and they had no right to recover, and the prayer ought to have been granted. On the contrary, if the jury found the theory asserted by the plaintiffs in their second prayer to be true, in that event they were entitled to recover.

With the instructions contained in the second prayer of the plaintiffs, and in the defendant's prayer, the jury could find for the one or the other party, according to their determination upon the testimony.