SAMUEL H. LYON ET AL. *vs.* ISRAEL C. HIRES ET AL.

*Counsel Fees Paid by One of the Parties Entitled to a Common Fund —Construction of Agreement as to Reimbursement of Expenses Incurred by Assignee of Property—Admissions by an Attorney.*

When two or more persons have interests in the same property and one of them conducts litigation which results in benefit to all the owners, he is not entitled to claim from the other parties, or to charge upon the common fund, any part of the counsel fees paid by him in conducting the litigation, unless there be an agreement between the parties, express or implied, to that effect.

Plaintiffs bought a vessel from defendants and to secure the payment of the purchase-money assigned to defendants a policy of life insurance and a reversionary interest under a will in certain property in New Jersey. Plaintiffs also agreed to pay the purchase-money with the interest and all sums to be paid by the defendants for premiums on the life insurance policy, and the insurance on the vessel, and "any other expenses." It was stipulated that upon the failure of plaintiffs to make these payments, the defendants should have the right to sell plaintiffs' said reversionary interest and apply the proceeds to the payment of their claim and other payments made by them and the costs of the sale, and the balance, if any, to pay over the plaintiffs. Some years afterwards, the debt being unpaid, the reversion fell in, and the defendants were obliged to resort to litigation in New Jersey to establish their right and that of the plaintiffs to the property bequeathed. After deducting from the amount received in that litigation the plaintiffs' indebtedness to the defendants, a surplus remained which defendants contended should be applied in part payment of counsel fees necessarily incurred in prosecuting the suit. *Held,* that under the agreement between the parties relating to the reimbursement of defendants' expenses they are entitled to be paid the counsel fees so expended in recovering the property assigned as security.

When a lawyer has been employed to collect by suit a certain claim, he has no authority to make any admissions binding his client relating to the proper distribution of the fund when recovered.

Appeal from the Baltimore City Court (STOCKBRIDGE, J.) By defendants' second prayer, which was refused, the Court was asked to rule that the defendants are entitled to an allowance for counsel fees properly expended in realizing the fund from the estate of I. D. Clawson, and if the fund so realized after allowing counsel fees expended shall be less than the sum due by the plaintiffs to the defendants, the verdict must be for the defendants.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*John Hinkley* (of *Hinkley & Morris*), for the appellants.

The administrator *c. t. a.* of Isaiah D. Clawson, denied the right of either the appellants or the appellees to any reversionary interest in the legacy. The point involved in that contention does not appear in the evidence in this case; but that doubt of the construction of Clawson's will existed

at the time the reversionary interest was conveyed to appellants is shown by the condition attached to the first agreement. A bill was filed by appellants in the Court of Chancery of New Jersey, through their solicitor, Hilliard, and was resisted by the administrator of Clawson, who carried the case to the Court of Errors and Appeals of New Jersey. This litigation resulted in the recovery from Clawson's estate of $9,322, which was collected by Hilliard on May 9th, 1899. This amount so recovered was $324.77 in excess of appellants' claim against appellees. It does not appear that appellees employed any counsel in New Jersey, or had any part in this litigation, which was apparently left wholly to the appellants. For conducting this litigation Hilliard deducted $500.92, fees and costs, which, it is agreed, was a reasonable and proper charge for his services. Hilliard also retained $1,448 additional, which he was compelled to refund; the expense of recovering this overcharge being $201.09 is also agreed to be a reasonable charge for such recovery. As a net result, therefore, the appellants have actually received $8,619.99 as against their undisputed claim of $8,997.23, or $377.24 less than was actually due. It will be noted, that Hilliard's overcharge and the cost of recovering it from him is immaterial, as Hilliard's proper charge of $500.92 brings the amount received below the amount due. The appellees, plaintiffs below, claim that no portion of Hilliard's fee is a proper deduction in accounting with them, and that the appellants were overpaid $324.77 on May 9th, 1899. The Court below adopted this view and rejected the defendants' prayers and found for the plaintiffs (appellees) for $338.98, which includes interest to date of verdict.

. The theory of the appellants' prayers is that the counsel fees necessarily expended in securing the fund from the Clawson estate are a proper allowance in this accounting. The law of Maryland does not allow the recovery of counsel fees by a creditor as against a debtor in addition to his debt, but it does allow them out of a fund when the dili-

gence of the creditor has created that fund for the benefit of himself and others. *Miller's Equity*, sec. 564, 565. *Insolvent Est. of Leiman*, 32 Md. 244 ; *B. & O. R. R.* v. *Brown*, 79 Md. 442 ; *Trustees* v. *Greenough*, 105 U. S. 527. And particularly when the exceptants reap the benefit of the services and stand by and see the work done. *Davis* v. *Gemmell*, 73 Md. 530. It is the fund that pays the expense. See *Kirk* v. *Breed*, 4 Ohio Dec. 403 : *Stanton* v. *Hatfield*, 1 Keen, 371 ; *Ex-parte Plitt*, 2 Wall., Jr., 453 ; *Brown* v. *Bigley*, 3 Tenn. Ch. 618. But it is said, that a lawyer cannot render services to a man without his consent, and the case of *McGraw* v. *Canton*, 74 Md. 554, was strongly relied upon in the argument in the lower Court. An examination of that case, however, and of the case of *Canton* v. *McGraw*, 67 Md. 583, will show that the proceedings taken by McGraw to set aside his father's deed were opposed by all the other members of the family, and, while resulting in the technical acquisition of property by them, were very much against their interest. In such a case, the reason for the allowance of fees, which is *beneficial services authorized or assented to*, fails. In the present case, the rendering of beneficial services is strongly presented. The administrator of Clawson contested the right of both the appellants and appellees to the legacy, and it would have been wholly lost but for the proceedings in New Jersey. The legal services were necessary to secure it and they had to be taken by the appellants in whom the legal title to the legacy stood. It is conceded, that the effect of the two agreements is to assign to appellants the legacy as security for the debt and not absolutely. They became, therefore, the mortgagees of the legacy, and a constructive trust is raised as to the surplus if any. The rights of the appellees arise under this constructive trust and are worked out through it, by treating the appellants as trustees or agents who are bound to account. Viewing them in this light, it seems clear that they are entitled to deduct their disbursements for the purpose of ascertaining whether they are

overpaid or not.   *Booth* v. *Balto. Steam Packet Co.*, 63 Md. 39 ; *Brady* v. *Dilley.* 27 Md. 570 ; *Farmers' and Planters' Bank* v. *Martin*, 3 Md. Ch. 224 ; *Green* v. *Putney*, 1 Md. Ch. 267.   In this connection note the expressions in the second agreement, which provides for insurance premiums on the boat, insurance premiums on Hires' life *and any other expenses*, and a few lines later the proceeds in case of sale are to be applied to the claim and interest *and other payments made by them*, and the costs of sale, and after that the balance, if any, is to go to the appellees.   Are not the words italicized sufficient to include the legal expenses of recovering the legacy ?

*Joseph Cooper Boyd*, for the appellees.

The appellants made the fight for their own benefit, and should pay their own solicitor.   They get about twenty-seven twenty-eighths of the fund, and want the appellees to pay all the fee.   No principle of law is more firmly settled than that if A volunteers to do a beneficial act for B, and B has not solicited the doing of the act or agreed that A shall do the same, B is under no obligation to compensate A for the benefit conferred.   One cannot legally claim compensation for voluntary services to another, however beneficial they may have been, nor for incidental benefits and advantages to one, flowing to him on account of services rendered to another, by whom he may have been employed.   Before legal charge can be sustained, there must be a contract of employment expressly made or superinduced by the law on the facts.   *Neighbor* v. *Maulsby*, 41 Md. 481 ; *Strike's case*, 1 Bland, 98 ; *Hand* v. *R. R. Co.*, 21 S. C. 178 ; *Canton* v. *McGraw*, 74 Md. 555.

The cases are numerous where attorneys employed by one distributee of an estate or one owner of an interest in property, who have by their exertions in behalf of the one client, incidentally benefited the others, have made claim for compensation against all the persons benefited, and where these pretensions have been disallowed.   *Ex-parte*

*Lynch,* 25 S. C. 195 ; *Wilson* v. *Kelly,* 30 S. C. 193 ; *Taylor* v. *Gorman,* 1 Drury & Walsh, 235 ; *Roselius* v. *Delachaise,* 5 La. Ann. 481. So in a case where a principal employs counsel to defend himself and sureties, the latter are not liable unless they consent to the employment. *Smith* v. *Tyford,* 24 Me. 147. Whenever the purpose of the pledge is satisfied, the pledgor's right to the surplus becomes absolute. *Carter* v. *Wake,* 4 Ch. D. 605. Where a life insurance policy was pledged as security, and the pledgee was paid by the insurance company, it was compelled to pay over the full amount of the surplus, and not allowed for expenses incurred by it in defending the fund from garnishment proceedings. *Earle* v. *N. Y. Life Ins. Co.,* 7 Daly, 303.

PAGE, J., delivered the opinion of the Court.

This is an action in assumpsit brought to recover a sum of money claimed by the appellees to be due them from the appellants on account of certain transactions connected with the purchase of the steamer Edgecombe. It appears that by an agreement in writing, dated the ninth day of April, 1887, the appellants agreed to sell the steamer to the appellees for the sum of forty-five hundred dollars, the title thereof to pass only when the amount was paid. To secure the payment of the purchase-money, the appellees were to assign all their title in and to a reversionary interest held by them under the will of I. D. Clawson, of New Jersey, also a policy of life insurance, and to keep the boat insured for the benefit of the vendors. If the appellees failed to pay the purchase-money, as required by the contract, or if at any time they become in arrears as much as $200, the appellants had the right of cancelling the agreement and resuming possession of the boat, in which event the appellees were to pay as charter-money at the rate of $780 per annum for the use of the boat. The reversionary interest, as well as the policies of insurance, in case of cancellation of the contract, were specifically made liable to the

appellants for premiums, repairs on boat and all bills for
which the boat would be liable.   This agreement, the prin-
cipal features of which we have thus stated, was followed
by a substitutionary agreement on the fifth day of Febru-
ary, 1887.   In this it was stated that the appellees were
" desirous of having the title of the steamboat transferred to
themselves," and that the appellants had agreed to do so
" upon the terms hereinafter mentioned. "   These terms
were as follows :  In consideration of the transfer of the title
of the steamer to the appellees, they agreed to pay the pur-
chase-money with interest, also all sums paid by the appel-
lants, " or which may hereafter be paid by them for account
of premiums paid on the " life insurance policy and the in-
surance on the steamer, "and any other expenses," and
upon failure or refusal of the parties (the appellees) " to
make said payments or any of them within the time men-
tioned," then the appellants shall have the right " to sell at
public or private sale, the said interest under the will of
Isaiah D. Clawson conveyed to them, and execute a deed
therefor to the purchaser thereof, and to apply the pro-
ceeds, first, to the payment of their said claim of $4,500 and
interest, and other payments made by them, and also the
costs of said sale, and the balance, if any, to pay over to
the said parties of the second part."   It was further agreed
that the life insurance policy should be renewed from time
to time, at the expense of the appellees, until the claim of
the other parties shall have been fully paid.   The life-ten-
ant of the legacy died in July, 1896, and the appellees hav-
ing failed to pay any part of their indebtedness, the appel-
lants proceeded to collect from the executors of the estate
of Clawson.   Of the two executors named in the will, one
had died and the other had resigned and the administrator·
appointed in their place, denied that the appellants or the
appellees had any interest in the reversion.   The appellants
were therefore compelled to institute legal proceedings in
the New Jersey Court, which resulted, after protracted liti-
gation, in their recovering the whole fund amounting to

$9,322. The amount then due the appellants, as appears from a statement in the record, was $8,997.23. The difference between these two sums, being $324.77, the appellants contend should be applied in partial payment of counsel fees that were necessarily incurred by them in prosecuting the suit.

The theory upon which this contention is made is that having been necessarily incurred in securing the legacy, proper counsel fees should be paid out of the fund. There is no evidence that the appellees employed counsel themselves, nor that there was any agreement between the parties in reference to the matter, other than the agreements already mentioned, and these will be considered in this connection later on. Apart from these agreements, it is difficult to perceive any ground, according to well-established principles, upon which these attorneys' fees can in this case be made a charge upon the common fund. It is true the suit resulted in a common benefit to both appellees and appellants, but that alone is not sufficient. " Before a legal charge can be sustained there must be a contract of employment, either expressly made or superinduced by the law upon the facts of the case." *McGraw* v. *Canton*, 74 Md. 559. Unless such contract, express or implied, can be established the party who engages counsel must pay for his services.

In the case of *Wilson* v. *Kelly*, 30 S. C. 483, cited approvingly in *B. & O. R. R. Co.* v. *Brown*, 79 Md. 447, one distributee brought an action for settlement, partition and distribution against her codistributees; and though her attorney defeated a claim asserted by one of the heirs, and reduced a claim presented by a judgment creditor, it was held the attorney was not entitled to a fee out of the fund, although his services were beneficial to all the heirs alike.

So in *ex-parte Lynch, &c.*, 25 S. C. 193, a mortgagor was sued by strangers for the recovery of the mortgaged land, and being advised he could not successfully resist, he informed the mortgagee that he proposed to make terms;

thereupon the mortgagee, with leave of the Court, did make defense and succeeded in defeating the claim ; it was held that the attorneys for the mortgagee were not entitled to payment for their services out of the surplus value of the mortgaged land.

The appellants in this case acted solely for themselves in prosecuting the New Jersey suit. Their object was to recover the legacy for their own benefit ; and having done so, without any arrangement, in fact, or to be implied by the circumstances, with the appellees, the latter cannot be called upon to contribute out of their share of the fund to the payment of counsel fees. *Carter* v. *Wake*, L. R. 4 Ch. Div. 605.

The cases cited by the appellant's counsel to sustain his position, may all be distinguished from the case at bar. In those cases the facts were such as in equity and fair dealing were sufficient to raise an assent upon the part of those who received the benefit of the litigation. In this case we have nothing more than the efforts of a creditor to secure his claim.

We come now to the consideration of the agreement between the parties and its effect upon the question involved in this case. The original agreement did not contemplate a change in the title to the boat until the purchase-money was fully paid. Upon certain contingencies the appellants were given the option of cancelling the agreement and in that event the appellees were to pay a certain sum per annum as " charter-money," and the reversionary interest and the policy of insurance were made liable for all such premiums and repairs on the boat as the appellants were obliged to pay and also for " all bills contracted by the appellees for which the boat shall become liable." But at the time of the final agreement, there was a different condition of things existing. The title to the boat was to be transferred to the appellees, and the condition of the transfer was that the reversionary interest should be liable for the purchase-money and interest, for " all sums heretofore paid

and thereafter to be paid by the appellants on account of premiums on the policies of insurance and any other expenses." On failure of the appellees to make such payments, or any of them, the appellants were to have the right to sell at public or private sale the reversionary interest and apply the proceeds to the payment of the purchase-money and interest; to " other payments " made by the appellants, and to the costs of sale, and the residue, if any, to the appellees. The appellants, by this agreement and the transfer of the title to the fund, were placed in the attitude of mortgagees, with power to make sale of the appellees' interest, upon failure of the latter to make the payments just recited. To what, then did the parties refer when they agreed that the security of the property pledged should extend to "any other expenses." Not to the money which the appellants should have to pay on account of the boat (for the title was to pass to the appellees), nor to insurance premiums, nor on account of the costs of making the sale, for the reason that those matters were provided for in specific terms in the contract. The title to the boat having passed to the appellees, the appellants stood in no danger of being charged with or having to pay for expenditures for repairs or other expenses upon it. What expenses, other than those just mentioned and specifically provided for in the agreement, could there be, except such as were necessary or might become necessary to enable the appellants to exercise their power of sale whenever it was proper to do so. At the time the reversionary interest was transferred the life-tenant was still alive and it might be years before the reversion fell in. What changes might occur, or what steps might thereafter be needed to preserve the right, it was impossible to foresee. In fact, thirteen years did elapse after the sale of the boat before the death of the life-tenant, and then the appellants found the claim of themselves and of the appellees denied. They were forced to the necessity of a long and expensive law suit. We think it a reasonable construction, therefore, to impute to the parties the

intent to provide by the use of these words for such " expenses " as might become necessary to enable the appellants to take the proper steps to preserve and keep alive the property that had been committed to their keeping. If any other construction were placed on the words, as used in this agreement, it will be difficult to determine to what they could possibly be made to refer. The directions as to the disposition of the proceeds of the sale are equally clear; they are to apply them first to the payment of the purchase-money, and then " to any other payments made by them," and the costs of said sale.

It follows from what we have said that the two prayers offered by the defendants should have been granted.

The only other exception in the case was taken to the admission in evidence of a letter of W. T. Hilliard, the appellants' solicitor in the proceeding in New Jersey to recover the legacy. It is insisted that it contains an admission adverse to the interest of the appellants in this case. But we are of opinion there is no such admission. The letter was written in reply to one to him from the counsel of the appellees. After stating the *status* of the case over which he had control and that he had received a statement of the account of the appellants against the appellees, the writer proceeds : " The amount due Mr. Lyon, as I recollect it, is considerably in excess of the interest of your clients in the legacy, and I think it very doubtful if there will be anything coming to them. When the final order is made in the case, I will ascertain the exact amount due Mr. Lyon, and if it should prove to be less than two-thirds of the legacy and accrued interest, I will so draw the order that the balance shall be paid to your clients." He makes no admission here as to the manner in which the " exact amount due Mr. Lyon " is to be ascertained or how the counsel fees are to be treated. It amounts to no more than a statement that when he has determined how much will be due the appellees, he will have the order so drawn as that it shall be paid to them. The letter therefore had no

relevancy whatever to the issue in this case, which is, whether the appellants have the right to deduct from the amount recovered proper and necessary attorney's fees, before applying the fund to their own claim.

But, apart from this, we do not think Hilliard had power to bind his clients by an admission in respect to matters not in his control. There is no proof that he was directly or indirectly so authorized, or that the appellant ever acquiesced in or ratified any admission he may have so made or that any of the parties have acted upon it. His authority was merely to conduct the proceedings for the recovery of the legacy, and that conferred upon him such powers only as were necessary to its proper accomplishment. The powers of an attorney have been so fully discussed by this Court in previous cases, that it is not deemed necessary to pursue the subject any further. *Maddox* v. *Bevan*, 39 Md. 485; *Fritchey* v. *Bosley*, 56 Md. 97; *Horsey, Miller & Co.* v. *Chew, Trustee*, 65 Md. 558.

We are of opinion therefore that the letter should have been rejected.

*Judgment reversed with costs.*

(Decided June 14th, 1900.)