# JAMES M. MUNROE AND JOHN S. STRAHORN

## *vs.*

## MARY L. WHITAKER ET ALS.

*Attorney's fees: when not chargeable to fund.*

Before a fee for legal services can be sustained as a charge against the fund, there must be a contract for services, expressly made, or implied by law from the facts of the case.          p. 404

Otherwise the party who engages counsel must pay for the services.                                              p. 404

The mere fact that the services were a benefit to all the parties concerned is not, of itself, sufficient to justify the charge out of the fund.                                   p. 404

Certain parties employed counsel to represent them in certain proceedings, and certain other parties employed other counsel, who conducted proceedings in opposition to the wishes of the former parties, and, as these claimed, even against their interest, and which proceedings such parties did not even sanction by inaction, but actively opposed; it was *held*, that in such a case the attorneys could not be paid their fees out of the common fund, but must look for their pay to the parties employing them.                                     pp. 405, 406

*Decided June 26th, 1913.*

Appeal from the Circuit Court for Cecil County, in Equity (ADKINS and HOPPER, JJ.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Frank Gosnell* and *Robert Moss,* for the appellant.

*Frederick T. Haines,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The single question presented in this case, is whether the Court below committed an error in refusing to allow a counsel fee of ten thousand dollars to the appellants out of the common fund of the trust estate of George P. Whitaker, late of Cecil County, deceased, upon the facts disclosed by the record now before us.

The question is raised by exceptions to the report and account of the auditor filed on the 10th day of May, 1912, in the case of *Updegraff et al.* v. *Whitaker et al.*, in the Circuit Court for Cecil County, distributing the trust estate among the descendants of the devisees and legatees named in the will of Mr. Whitaker.

On the 18th of January, 1912, the appellants filed a petition in the case asking the Court, "to allow them a reasonable compensation for their services as solicitors and attorneys in the case to be paid out of the portion of the estate to be distributed under the order of the Court."

The petition sets out the grounds upon which they rely for compensation, and was accompanied by a recommendation of certain members of the bar of the State named on the certificate, that the fee was a moderate compensation for their

services, and was a proper one to be allowed, and to be paid out of the estate.

Upon this petition and recommendation, the Circuit Court for Cecil County, on the 5th day of March, 1912, directed the fee to be allowed by the auditor in the account, thereafter to be stated, subject to all proper exceptions and directed a copy of the petition and order to be served upon each of the parties in interest or their attorneys before the audit was filed.

On the 18th of September, 1912, the report and account of the auditor as stated was finally ratified and confirmed, except as to the counsel fees allowed in the audit, and they were reserved for the future action of the Court.

Subsequently, on the 3rd of March, 1913, two agreements were filed, by the attorneys representing the appellants and the appellees, wherein it was agreed, that the formal taking of testimony on the petition, and the exceptions to the audit, should be waived, and the testimony set out in the agreements should be substituted therefor, and used at the hearing, in lieu of the usual taking of testimony.

On the 17th of March, 1913, the Court below upon hearing and after arguments, sustained the exceptions to the allowance by the auditor of the fee in question and directed the fund to be distributed to the parties entitled. From this decree, this appeal has been taken.

The material averments of the petition are substantially as follows:

First—That upon employment by certain of the parties in interest the petitioners instituted proceedings in the Circuit Court for Cecil County by a proper bill in equity to require an accounting by the executor and trustee, Joseph Coudon, and to require a bond of the executor and trustee, which bond had never been given, and to require a distribution of the large amount of money which had accumulated in the hands of the executor and trustee undistributed, as required by the will, over and above the amounts set aside under the terms

of the will for the maintenance of the widow of the testator during her life or widowhood.

Second—That the cause was prosecuted successfully in the Circuit Court for Cecil County, in Equity, and also in the Court of Appeals of Maryland, the decree of the lower Court ordering the relief prayed for in the bill of complaint having been affirmed by the latter Court.

Third—That the result of the efforts of the petitioners has inured to the benefit of all parties interested in the estate, by securing an order requiring the surviving executor and trustee, Coudon, to give bond for the faithful administration of his trust, and by securing an immediate distribution of the estate of George P. Whitaker, in accordance with the provisions of his will, the amount now in hand for distribution amounting to about $325,000.

Fourth—That the whole estate for which the executor, Coudon, as trustee is responsible, and for which no bond whatever had heretofore been given, amounted to $370,-978.28, as shown by the 17th and last account filed by the executor, Coudon, December 13th, 1911, as of January 1st, 1911; so that the actual assets now in the hands of the executor and trustee amount to about the sum of four hundred thousand dollars ($400,000.00).

Fifth—That all the parties who are to participate in the distribution ordered by the Court in this case are equally beneficiaries of the services rendered by the petitioners.

The appellees, who were the defendants in the suit and who represented four-fifths of the estate, resisted the payment of the fee, and assign the following reasons in their brief filed in this Court, against its allowance:

(1) Appellants were employed by the plaintiffs and should look to them for their compensation.

(2) There was no contract expressed or implied between the defendants and the appellants, and in the absence of such contract no additional fee can be allowed out of the estate.

(3) The defendants did not employ the appellants, nor countenance their employment in any way.

(4) The defendants were opposed and hostile to the litigation and the objects sought to be attained by it, as being against their interests and contrary to their wishes and desires in the matter.

(5) That the defendants were not benefited in any particular by the results accomplished in the litigation.

(6) That the defendants vigorously contested the whole proceeding, and it would be unjust and inequitable to require them to pay for services which they did not want nor acquiesce in, services that resulted in a litigation which they strenuously opposed, and the result of which was not beneficial or agreeable to them.

(7) There was paid to said appellants in accordance with their contract a fee that was full and ample compensation for all of the services performed.

The evidence upon the part of the appellants as set out in the agreement No. 2 filed in the case, is to the effect:

(1) That they were employed in this case solely by the plaintiffs.

(2) That they had an agreement with their clients to prosecute their suit for them for five per cent. (5%) of whatever amount was paid to their clients under any distribution brought about through their efforts in the suit.

(3) That on September 23rd, 1912, they received from their clients the sum of $3,821.89, being the amount due them under the agreement out of the sums paid to the plaintiffs on that date.

(4) That they did not agree that this amount should be their sole compensation in the cause, but on the contrary it was their expectation to ask for a fee from the whole estate, as had been done; provided, their clients were not in any way affected thereby.

(5) That at the time they asked for the fee of $10,000.00 they agreed with their clients that of whatever fee was al-

lowed them under their petition for same the share thereof which would otherwise be awarded to their clients, if no such fee was paid out of the whole estate, would be returned to their clients.

·(6) That at the time of the payment of $3 821,89 a formal assignment of the portion of the fee (being 1/5 thereof) was made to the plaintiffs, so that in any event, only $8,000.00 of the fee can come into the hands of the appellants.

The evidence upon the part of the appellees as incorporated in agreement No. 1, filed in the case, is to the following effect:

(1) That each of the defendants has a legal or equitable interest in a considerable number of the shares of the capital stock of the Whitaker Iron Company and the Whitaker-Glessner Company, and each of their male defendants is a director in and the same are officers in either one or both of the companies; the companies being those mentioned in the bill of complaint.

(2) That each of the defendants has not been benefited by the decree passed in this cause and the distribution made thereunder.

(3) That each was familiar with the facts in connection with the estate, the investment of its funds and the condition of its affairs, and was perfectly willing to allow the same to remain as they were until the death of Mary L. Whitaker, the life tenant, and that each of the defendants did not want any distribution of any portion of the estate prior to her death, and was at the time of the institution of this suit and ever since opposed to the distribution or partial distribution being made. ·

(4) That upon the institution of this suit all of the defendants joined in retaining George A. Blake and Frederick T. Haines as their solicitors to represent and appear for them in this litigation and to oppose vigorously the prosecution of the suit by the plaintiffs and to do everything that could

legally and properly be done to defeat a distribution as sought in the bill filed in the cause.

(5) That at the time the suit was begun and ever since, the defendants desired the residuary estate of George P. Whitaker, deceased, to remain undistributed until the death of Mary L. Whitaker, because they believed it was to the advantage of the residuary legatees under the will of the deceased, for the reason that the estate's funds were invested in a way that they considered safe, and that produced a much higher income than could otherwise be obtained; that the investment was in their opinion most desirable and advantageous, and it is a fact that it caused the residuary estate to grow in twenty years from thirty thousand dollars ($30,000) to three hundred thousand dollars ($300,000); that the investment was particularly pleasing to them for the additional reason that it was with the above-named companies in which these defendants were stockholders and with the affairs and business of which these defendants were perfectly familiar; that they did not have need of their respective shares of the residuary estate or any part thereof at the time of the institution of this siut nor since, nor of the income therefrom, but preferred, because of the excellent investment of the same and the consequent great increase thereof, to have said residuary remain where and as it was until the death of said Mary L. Whitaker; that said Mary L. Whitaker is now at least eighty years of age.

That the defendants did not employ the solicitors of the plaintiffs, to wit, James M. Munroe and John S. Strahorn, nor either of them, nor agree to become in any manner responsible for their fees, or any portion thereof; that they did not desire, solicit or sanction their services, and now state most emphatically that the solicitors have not done anything for them, nor benefited them in any particular in this litigation, or in any other manner, but on the contrary, what the solicitors have accomplished, to wit, the distribution of a portion of the residuary estate, is against the interest of the

defendants, contrary to their wishes and constitutes that which they did not want to occur until the death of Mary L. Whitaker; that they do not owe said solicitors anything, and object to paying the fee of ten thousand dollars ($10,-000.00) asked for, or any portion thereof; that the solicitors were employed by the plaintiffs in this cause, and said employment and the institution of this suit was hostile to the defendants and each of them, and against their interests and without their consent or approval, and that they were opposed to the object of the suit and vigorously resisted it, and did not willingly accept said distribution, but were compelled by order of Court to do so.

Upon the facts which we have stated, and those disclosed by the record, we concur in the conclusion reached by the Court below, that the appellants are not entitled to be compensated out of the common fund for the services rendered, as the attorneys for the plaintiffs, as claimed by them.

The counsel fee in controversy in this case, we think, comes within the principles laid down and announced by this Court in *McGraw* v. *Canton,* 74 Md. 554, and *B. & O. R. R. Co.* v. *Brown,* 79 Md. 442, and are decisive of the questions presented on this appeal. These cases have been cited and approved by this Court in the more recent cases of *Lyon* v. *Hires,* 91 Md. 416; *Title Co.* v. *Burdette,* 104 Md. 666; *Griffith* v. *Dale,* 109 Md. 700, and *Walker* v. *Waters,* 118 Md. 208, and are clearly controlling upon the facts of this case.

The cases of *Davis* v. *Gemmell,* 73 Md. 530, and *Terminal Freezing and Heating Company* v. *Whitelock et al.,* 120 Md. 408, relied upon by the appellants, are unlike this and were decided upon a dissimilar state of facts and upon principles not applicable in this case.

In the case at bar, it is not disputed, that the appellants were employed exclusively by the plaintiffs, who owned one-fifth of the estate, and they have been paid a fee of $3,821.89

for the services rendered by them out of the fund distributed to their clients in accordance with their contract. They were not employed by the defendants nor were their services either accepted, adopted or acquiesced in by the defendants.

The testimony of the appellants themselves is, that they had an agreement with their clients to prosecute their suit for them for five per cent. (5%) of whatever amount was paid to their clients under any distribution brought about through their efforts in the suit, and they have been paid this sum.

The result of the allowance of the fee, on the facts of this case, would be to require the plaintiffs to pay the sum of two thousand dollars out of the $76,435.70 of their distributive share, and the defendants, the owners of four-fifths of the estate, to pay the sum of $8,000.00. Practically this conclusion would refund to the plaintiffs' clients the sum of $1,821.89, paid them out of the fee of $3,821.89, and would allow the appellants an additional sum of $8,000.00 to be paid by these defendants. As was said by JUDGE PAGE in *Lyon* v. *Hires,* 91 Md. 418, "It is difficult to perceive any ground according to well established principles, upon which these attorneys' fees can in this case be made a charge upon the common fund. It is true the suit resulted in a common benefit to both appellees and appellants, but that alone is not sufficient. Before a legal charge can be sustained there must be a contract of employment, either expressly made or superinduced by the law upon the facts of the case, *McGraw* v. *Canton,* 74 Md. 559. Unless such contract express or implied can be established, the party who engages counsel must pay for his services." He further said: "The appellants in this case acted solely for themselves in prosecuting the New Jersey suit. Their object was to recover the legacy for their own benefit, and having done so without any arrangement in fact, or to be implied by the circumstances, with the appellees, the latter can not be called upon to contribute out of their share of the fund to the payment of

counsel fees." And to the same effect are the cases of *Carter*
v. *Wake,* L. R. 4 Ch. Div. 605; *Wilson* v. *Kelly,* 30 S. C.
483; *Ex Parte Lynch,* 25 S. C. 193; *Hand* v. *R. R. Co.,* 21
S. C. 178; *Grimball* v. *Cruse,* 70 Ala. 544; *Hill* v. *Childress,*
18 Tenn. 515; *Roselius* v. *Delachaise,* 5 La. (Annual Rep.)
481.

In *Koenig* v. *Ward,* 104 Md. 566, it was said: The purpose
and object of the proceedings were, not to recover the estate
or to protect it from spoilation, but to determine who should
get it, and in what proportions. The practical question liti-
gated and settled was one of distributive right, to wit, whether
the estate should be divided between the beneficiaries under
the will or the heirs-at-law and distributees'of the decedent.
It was not an issue between the estate and third parties, but
one *inter partes,* those claiming to be interested in the distri-
bution. Under these circumstances, it was held in that case
that counsel fees should not be allowed out of the estate.

In the case at bar the proof shows that the defendants em-
ployed counsel to represent them in the litigation, and the
proceedings were conducted on the part of the plaintiffs in
opposition to their wishes and as claimed, adverse to their
interest. They did not stand by and sanction the services,
but interferred and objected, and now claim that they were
not benefited by the litigation in any particular, except that
an existing fund has been distributed a very few years ear-
lier than it otherwise would have been, in accordance with
the wishes of the plaintiffs and in opposition to the wishes of
the defendants, and they would have received it later on,
even if said litigation had not been instituted.

The fact that a bond was required of the trustee, although
none was directed by the will, was a matter entirely within
the power of a Court of Equity, after having assumed juris-
diction of the estate, according to the circumstances of the
case. It must be assumed that a Court having charge of a
fund, will do what is necessary or proper to protect it, either
upon direct application or when it appears that the circum-

stances of the case require it. *Smith* v. *Michael,* 113 Md. 18; *Myers* v. *Safe Deposit Co.,* 73 Md. 413; *Oesterla* v. *Gaither,* 90 Md. 40.

It will be seen that the principal relief sought by the bill filed by the plaintiffs in this case was a distribution of the funds of the residuary estate of Mr. Whitaker, and a construction of his will, and this was determined in *Coudon* v. *Updegraf,* 117 Md. 71.

The position of the plaintiffs on the record in that case was one of absolute antagonism and hostility to the defendants, and the plaintiffs were opposed by all of the defendants in the litigation.

We have been referred to no case in this, or any other jurisdiction, where counsel fees have been allowed out of a common fund for legal services rendered on a state of case as disclosed by this record.

We must deal with the case as presented by the record, and on the well settled principles of law established by the decisions of this Court, and so treating it the order of the Circuit Court for Cecil County disallowing the fee will be affirmed.

*Order affirmed, with costs.*